# CHARLESTON

FLAHERTY *v.* FLEMING *et al.*

Submitted January 12, 1906.　Decided February 6, 1906.

1. EASEMENT—*Right of Way—Obstruction.*

Kight, by deed dated the 15th of July, 1889, and duly recorded on the 22nd of July, 1889, conveyed to Flaherty a lot of land on the north side of Seventh Street in the city of Parkersburg, "also a free right of way for an alley way twelve feet wide extending from the rear end of said lot across another lot owned by said Kight to the alley running to Latrobe Street." After this deed was recorded, Kight conveyed the lot over which the right of way had been granted to Weber, and Weber conveyed it to Fleming. *Held*: That under the circumstances of this case, the placing of a fence upon, or a gate upon and over, such right of way by Fleming, after becoming the

owner of his lot, is a wrongful obstruction of such way, and in violation of the right of Flaherty under his deed.   (p. 673.)

2. EASEMENT—*Right of Way—Obstruction—Injunction.*
    Injunction is a proper remedy to prevent the maintenance of a wrongful obstruction of a private way.  (p. 674.)

3. INJUNCTION—*Criminal Proceeding.*
    It is a rule, subject to few exceptions, that a court of equity will not interfere by injunction with criminal proceedings.  (p. 675.)

Appeal from Circuit Court, Wood County.

Bill by Michael W. Flaherty against Charles Fleming and E. F. Wilson.   Decree for defendants, and plaintiff appeals.
*Reversed.*

J. W. VANDERVORT, for appellant.

J. ROBERT ANDERSON and F. L. MUHLEMAN, for appellees.

COX, JUDGE:

This is an appeal from a decree sustaining a demurrer to, and dismissing, a bill in chancery, brought in the circuit court of Wood county by Michael W. Flaherty against Charles Fleming and E. F. Wilson, Justice. The bill alleges, in substance: That J. W. Kight, by deed dated the 15th of July, 1889, and recorded on the 22nd of July, 1889, conveyed to Flaherty a lot of land on the north side of Seventh Street in the city of Parkersburg, and "also a free right of way for an alley way twelve feet wide extending from the rear end of said lot across another lot owned by said Kight to the alley running to Latrobe Street;" that after the recordation of this deed Kight conveyed the lot over which the right of way was granted to George Weber, and afterwards Weber conveyed it to Fleming by deed dated the 14th of April, 1897; that after Fleming became the owner of his lot he occasionally fenced up said right of way, so that Flaherty was not able to freely use the same; that about a week before the filing of the bill Fleming began the erection of a gate on and over said right of way, and obstructed the free use of such right of way by Flaherty; that shortly after Fleming purchased his lot Flaherty called Fleming's attention to the fact of the existence of such right of way; that Flaherty also gave notice in writing of his rights under his deed, to Fleming, and that if he did not remove the gate Flaherty would remove it; that, the gate not being removed pursuant to the

notice, Flaherty tore it down; that Fleming procured a warrant from Wilson, Justice, and caused Flaherty to be arrested upon a charge of injuring and defacing real property not his own; that such right of way twelve feet wide has been used by Flaherty since he purchased his lot, until so obstructed by Fleming; and that Fleming threatens to replace said gate and to reconstruct said obstructions. Previous to the decree sustaining the demurrer and dismissing the bill, a preliminary injunction had been awarded, as prayed for in the bill.

The principal controversy in this case is whether or not the defendant Fleming may place upon and over such right of way a fence or gate. This involves a construction of the deed to Flaherty, and the ascertainment of the intention of the parties to it when it was made. It does not clearly appear by the bill what the condition of the right of way was when the deed was made. Therefore, what we shall say in relation to the intention of the parties and the construction of the deed, will relate to the right of the owner of the servient lot to obstruct the right of way after the time the deed was made, and not to any obstruction or obstructions to such way which existed at the time of the making of the deed.

If there be no ambiguity, we must arrive at the intention of the parties from the language used. The words are to be taken in their ordinary and popular sense, unless it appears by the context that they were used in a different sense, or unless when applied to the subject matter they have a technical meaning. *Railroad* v. *Schutte*, 103 U. S. 118; *Snodgrass* v. *Wolf*, 11 W. Va. 158; *Schuylkill Co.* v. *Moore*, 2 Whart. 477. For the purpose of construction, all parts of the deed must be considered together. *Barber* v. *Ins. Co.*, 16 W. Va. 658; *Heatherly* v. *Bank*, 31 W. Va. 70. It rarely happens that the language used in one grant of an easement is exactly like the language used in another. Therefore, each case must be determined according to the words used. The words here are: "a free right of way for an alley way twelve feet wide." Generally, the mere grant of a right of way over land and nothing more, does not pass any other right or incident. The owner of the soil may make any use of his land which does not interfere with a reasonable use of the way. Subject to the easement, his control extends indefi-

nitely upward from the surface and downward *ad inferos.* Jones on Easements, § 391; 14 Cyc. 1201. However, where the easement is created by express grant, defining the rights of the parties, the terms of the grant must govern.

"Whether a grantee of a right of way is entitled to a way unobstructed by gates or bars depends upon the terms of the grant, the purposes for which it was made, the nature and situation of the property, and the manner in which it has been used." Jones on Easements, § 319; *Field* v. *Leider*, 118 Ill. 17; *Cowling* v. *Higginson*, 4 M. & W. 245; *Smith* v. *Worn*, 93 Cal. 206; *Houpes* v. *Anderson*, 22 Ia. 161.

It is contended that the word "free" means free from compensation; without further payment. This contention cannot be maintained. The word "free" is found in a deed of grant. The consideration for the grant is named in it. If the word "free" means free in the sense that it is without further consideration, then it would be useless in this deed, and would give no more than the law would give without the use of the word. It is unnecessary to say "free" in the sense of without further consideration, in a deed of grant, in relation to the thing granted. There would be no more reason for using the word "free" in that sense, in relation to the right of way, than there would be for using it in relation to the lot granted by the deed. Without the use of the word in either case, the thing granted is free from the payment of consideration other than that agreed to be paid. It appears that the word "free," as used in this clause, qualifies and relates to "right of way" in a different sense. It is descriptive of the right of way— the thing granted—and is not descriptive of the use to be made of the right of way. Webster's Dictionary defines the word "free," when used in relation to a thing to be enjoyed or possessed, as follows: "Thrown open, or made accessible to all; to be enjoyed without limitation; unrestricted; not obstructed, engrossed, or appropriated; open." Applying that definition here, the word "free" indicates the condition and character of the "right of way"—the thing granted, the thing to be enjoyed and possessed. In that sense, it means an unobstructed right of way, so far as any future act of the owner of the servient lot is concerned. The additional language, "for an alley way twelve feet wide," we think means for the purpose of an alley way twelve feet wide, or to be

used as an alley way twelve feet wide. The way is definite, and fixed in width, and is "for an alley way." The words "alley way" have the same meaning as the word "alley." An alley may be public or private. When used in a plat or statute concerning towns or cities, it will be taken to mean a public way, unless the word "private" is prefixed or the context requires a different meaning. Elliott on Roads and Streets, § 24. When used in a deed between private parties, it may mean a private alley, if that clearly appears to be the intention. *City of Chicago* v. *Borden*, 190 Ill. 430. An alley is a narrow passage or way in a city, as distinguished from a public street. 2 Am. & Eng. Enc. Law, 149. If the grant were of a public alley way or alley, it would certainly imply an open and unobstructed alley way or alley. From the use of the same word or words, by parties in relation to land in a city, although by the context it appears to be a private alley way, it seems to be a fair inference to say that they mean the same as to the character and condition of the alley way, so far as future obstructions are concerned, as they would mean were it a public alley or alley way. In other words, the difference between a public and private alley way is not so much in the character or condition of the alley way as in the use and control of it. Taking the words of the deed together, it appears to us that the intention was to give a way open and unobstructed so far as any future act of the owner of the servient estate is concerned.

If there be doubt as to this construction, then we must resort to the circumstances surrounding the transaction, the situation of the parties, the subject matter of the deed or contract, and the subsequent acts of the parties under it. *Shrewsbury* v. *Tufts*, 41 W. Va. 212; *Heatherley* v. *Bank*, *supra*. The bill of complaint is rather barren of circumstances or facts which aid us in construction. It does appear, however, that these lots are in a city, and not in the country, and that Flaherty had the use of this right of way until Fleming purchased his lot, and down to the time of the erection of the gate, with the slight interference and obstructions by the occasional fencing up of the way by Fleming. It was nearly eight years from the time that Flaherty bought his lot until Fleming bought his lot, during which time Flaherty used such way. It seems to us that this is material upon the

question of construction, and as to the intention. Upon the question of construction, see *Dickinson* v. *Whiting*, 141 Mass. 414; *Burham* v. *Nevins*, 144 Mass. 88; *Kena* v. *Bolton*, 36 N. J. Eq. 21; *Williams* v. *Clark*, 140 Mass. 238; *Welch* v. *Wilcox*, 101 Mass. 162; *Hacke's App.*, 101 Pa. St. 245.

In *Williams* v. *Clark*, the controversy was concerning a crossing of a railway. The court said: "While, in terms, it is not provided that this crossing should not be unobstructed by gates or bars, yet the facts that it was to be 'convenient,' and that the railroad company itself constructed and for many years permitted the existence of such a one, sufficiently show that what it intended to grant was a *free right of passage*. No usage or circumstances such as are shown where one grants a way or right of way over a field devoted to agricultural or other purposes, indicating that the right granted is to be subordinate to the rights of the grantor, or the use made by him of the premises, here exist."

The construction above adopted, in our judgment, determines the question of the right of Fleming to obstruct the way in controversy. If the way is to be open and unobstructed, so far as future acts of the servient owner are concerned, it certainly is not to be obstructed by him. The placing of anything upon the way by the servient owner which would make it less useful or less convenient to the one entitled to the easement than an open, unobstructed way, is an obstruction, and a violation of the terms of the grant. It can hardly be contended that the placing of a fence or gate upon and over this way does not make it less useful and less convenient than an open, unobstructed way.

"The necessity of opening and closing the gate, as well as the more limited space through which the defendant must conduct his teams and cattle, would materially interfere with his convenient use of the lane." *Dickinson* v. *Whiting*, *supra;* see, also, *Burham* v. *Nevins*, *supra*; *Kena* v. *Bolton*, *supra*.

Injunction is a proper remedy to prevent the maintenance of a wrongful obstruction of a private way. *Rogerson* v. *Shepperd*, 33 W. Va. 307; *Boyd* v. *Woolwine*, 40 W. Va. 282.

There is another feature to the plaintiff's bill. He seeks to enjoin the prosecution of the criminal proceeding upon the

warrant mentioned, which appears to have been issued against Flaherty, charging him with injuring and defacing real estate not his own, namely, the gate or gates in controversy. It is a rule subject to few exceptions, that equity will not interfere by injunction with criminal proceedings, having no jurisdiction or power to afford relief in such cases. Jurisdiction over criminal cases is conferred upon courts specially created to hear them; and, with few exceptions, it is beyond the power of equity to control, or in any manner interfere with, such proceedings by injunction. High on Injunctions, § 68, and cases cited in note 5. It appears, however, that if a statute "concerning which an arrest or criminal prosecution is threatened affects civil property and its enjoyment, in protecting the property right equity may properly enjoin the criminal prosecution," but in such case its interference is founded solely upon the ground of injury to property and the necessity of preserving property rights. Also, where a suit is already pending in equity, and a criminal prosecution is instituted for the purpose of testing the same right as that in issue in the equitable action; in such case a court of equity may impose conditions on a suiter seeking its aid, and hence, in order to protect its prior jurisdiction, may compel him to abandon the criminal prosecution until a final determination of the whole matter in equity. *Dobbins* v. *City of Los Angeles*, 25 Sup. Ct. Rep. 18; High on Injunctions, 88, and cases cited in note 10. It does not appear that the plaintiff brings himself within any of the exceptions. The criminal proceeding was commenced first, and the statute under which it was commenced is not questioned. That statute determines no property right in this case.

We are of the opinion that the injunction against the criminal prosecution is improper, and that the bill, to the extent that it relates to the criminal prosecution, is without equity. The demurrer in this cause is general, and must be overruled, because the allegations of the bill if true are sufficient for the purpose of an injunction preventing the obstruction, or the maintenance of an obstruction, of the right of way mentioned. *Allen* v. *S. P. Coal Co.*, 58 W. Va. 197.

It follows that the decree of the lower court must be reversed, and this cause remanded, to be further proceeded with according to the principles herein announced and the rules governing courts of equity.

*Reversed.*