IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

January 2022 Term

_____

No. 20-0792

_____

FILED
April 25, 2022

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

AUTO CLUB PROPERTY CASUALTY INSURANCE CO.,
Petitioner,

v.

JESSICA A. MOSER,
Respondent.

_____

Appeal from the Circuit Court of Berkeley County
The Honorable Michael Lorensen, Judge
Civil Action No. 19-C-165

AFFIRMED

_____

Submitted: January 5, 2022
Filed: April 25, 2022

Ancil G. Ramey, Esq.
Steptoe & Johnson PLLC
Huntington, West Virginia
Melanie Morgan Norris, Esq.
Steptoe & Johnson PLLC
Wheeling, West Virginia
Counsel for the Petitioner

Mark Jenkinson, Esq.
Ronald M. Harman, Esq.
Burke, Schultz, Harman & Jenkinson
Martinsburg, West Virginia
Counsel for the Respondent

CHIEF JUSTICE HUTCHISON delivered the Opinion of the Court.

JUSTICE ARMSTEAD dissents and reserves the right to file a separate opinion.

JUSTICE MOATS, sitting by temporary assignment, did not participate in this decision.

**SYLLABUS BY THE COURT**

1.      "The interpretation of an insurance contract, including the question of whether the contract is ambiguous, is a legal determination that, like a lower court's grant of summary judgement, shall be reviewed *de novo* on appeal."  Syl. pt. 2, *Riffe v. Home Finders Assocs., Inc.*, 205 W. Va. 216, 517 S.E.2d 313 (1999).

2.      This Court reviews an award of costs and attorney's fees under an abuse of discretion standard.

3.      "Language in an insurance policy should be given its plain, ordinary meaning." Syl. pt. 1, *Soliva v. Shand, Morahan & Co.*, 176 W. Va. 430, 345 S.E.2d 33 (1986).

4.      "Where the provisions of an insurance policy contract are clear and unambiguous they are not subject to judicial construction or interpretation, but full effect will be given to the plain meaning intended."  Syl., *Keffer v. Prudential Ins. Co. of Am.*, 153 W. Va. 813, 172 S.E.2d 714 (1970).

5.      "It is not the right or province of a court to alter, pervert or destroy the clear meaning and intent of the parties as expressed in unambiguous language in their written contract or to make a new or different contract for them."  Syl. pt. 3, *Cotiga Dev. Co. v. United Fuel Gas Co.*, 147 W. Va. 484, 128 S.E.2d 626 (1962).

6. "Where attorney's fees are sought against a third party, the test of what should be considered a reasonable fee is determined not solely by the fee arrangement between the attorney and his client. The reasonableness of attorney's fees is generally based on broader factors such as: (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases." Syl. pt. 4, *Aetna Cas. & Sur. Co. v. Pitrolo*, 176 W. Va. 190, 342 S.E.2d 156 (1986).

**HUTCHISON, Chief Justice**:

In this appeal from the Circuit Court of Berkeley County, we consider a lawsuit by an insured against her insurance company concerning the "medical payments coverage" provision in her automobile insurance contract. Specifically, we consider the contract's requirement that the insurance company reimburse the insured for any medical expenses she "incurred" in an accident. The insured received a medical bill for treatment she received after an automobile accident, one that was eventually resolved by her health insurer. The insurance company refused payment and claimed that the medical bill had not been "incurred." The circuit court examined the language of the contract and found that the insurance company wrote it to say a medical expense was "incurred" when the insured received and became liable to pay for medical services. Further, the terms of the contract, written by the insurance company, obligated the company to reimburse the insured the full amount of the expense. Because the insured was required to sue to enforce the insurance contract's terms, the circuit court also required the insurance company to reimburse the insured for her costs and attorney's fees.

As we discuss below, we find no error in the circuit court's interpretation of the medical payments provision in the insurance contract. The contract's language was chosen by the insurance company, and six decades of case law interpreting identical language in similar policies establish that the contract clearly afforded coverage to the insured on the facts presented below. We also find no error in the circuit court's rulings on costs and attorney's fees.

1

# I. Factual and Procedural Background

Plaintiff Jessica A. Moser was an "insured person" under an automobile insurance contract issued by the defendant, Auto Club Property Casualty Insurance Company ("Auto Club"). The contract included a provision that afforded an "insured person" up to $5,000 in "medical payments coverage." The medical payments provision stipulated that Auto Club would pay the reasonable medical expenses "incurred" by an insured person for bodily injuries sustained in a collision while occupying a motor vehicle.[1] As we discuss in greater detail below, the parties dispute what it means for a medical expense to be "incurred" under the contract.

On October 17, 2017, the plaintiff was driving a motor vehicle insured by Auto Club. She was injured when her vehicle was struck by another vehicle in a rear-end collision. The driver of the other vehicle was determined to be at fault. The plaintiff was

---

[1] The pertinent portion of the Auto Club policy pertaining to medical payments coverage provides:

> INSURING AGREEMENT
>
> . . . [W]e will pay reasonable medical expenses *incurred* for necessary medical and funeral services because of bodily injury:
>
> 1. caused by an accident; and
>
> 2. sustained by an insured person. . . .

(Emphasis added, other italics and bolding omitted). The provision extends coverage to an "insured person" "while occupying . . . a motor vehicle[.]"

2

taken by ambulance to a hospital for examination. She was soon released and, over the

following months, visited various medical providers for follow-up treatment. The plaintiff

received charges from those medical providers, all related to the collision, totaling

$19,522.56. Those medical expenses were resolved by the plaintiff's health insurer, the

West Virginia Medicaid program.[2]

Before going further into the facts, we emphasize that the plaintiff's receipt

of medical benefits from the Medicaid program is not important to the outcome of this case.

However, in order to understand how Auto Club's subsequent actions were misguided, a

rudimentary explanation of West Virginia's Medicaid program and the program's right to

subrogation when an injured plaintiff receives Medicaid medical benefits is necessary.

State law provides that when a third party is legally liable for a plaintiff's

past medical expenses that were paid by the Medicaid program, the program automatically

receives a "subrogation lien" to recover those expenses.[3] The plaintiff's lawyer is required

---

[2] The Medicaid program is administered by the West Virginia Bureau for Medical Services; the Bureau contracted with Aetna Better Health of West Virginia ("AetnaWV") to manage its Medicaid program. AetnaWV subsequently contracted with Equian LLC to recover past medical expenses paid by the Medicaid program from any third party who might legally be liable for those expenditures. For clarity, we refer to these entities as "the Medicaid program."

[3] Federal law, 42 U.S.C. § 1396k(a)(1)(C), requires that every State providing medical assistance under the Medicaid plan must establish a requirement that any person receiving assistance "cooperate with the State in identifying, and providing information to assist the State in pursuing, any third party who may be liable to pay for care and services available under the plan[.]" More specifically, 42 U.S.C. § 1396a(a)(25)(H) dictates that

Continued . . .

3

to notify the Medicaid program when the lawyer initiates a claim or lawsuit against the third party for those past medical expenses.[4] If the claim or lawsuit against the third party concludes with a settlement, then the plaintiff's lawyer is required to notify the Medicaid program of "the amount of the settlement being allocated for past medical expenses paid for by the Medicaid program."[5] As we said in Syllabus Point 4 of *In re E.B.*, 229 W. Va. 435, 729 S.E.2d 270 (2012), the Medicaid program may "obtain reimbursement for medical expenses paid from only that portion of the settlement, compromise, judgment, or award obtained by a recipient of Medicaid assistance that constitutes damages for past medical expenses."

---

> [a] State plan for medical assistance must . . . provide . . . that to the extent that payment has been made under the State plan for medical assistance in any case where a third party has a legal liability to make payment for such assistance, the State has in effect laws under which . . . the State is considered to have acquired the rights of such individual to payment by any other party for such health care items or services[.]

West Virginia has complied with this federal requirement. West Virginia Code § 9-5-11(b) (2013) provides that submitting an application for Medicaid medical assistance "is, as a matter of law, an assignment of the right of the applicant or his or her legal representative to recover from third parties past medical expenses paid for by the Medicaid program." A legal representative (for either the plaintiff or a third party) who fails to assist the Medicaid program in collecting these past medical expenses is liable "for all reimbursement amounts the [Medicaid program] would otherwise have been entitled to collect . . . but for the failure to comply." *Id.* § 9-5-11(f). However, the statute provides that "[u]nder no circumstances may a pro se recipient be penalized for failing to comply with the provisions of this section." *Id.*

[4] *See id.* § 9-5-11(c)(1).

[5] *Id.* § 9-5-11(d)(1).

4

Within thirty days of receiving the settlement notice, the Medicaid program must either consent to or reject the plaintiff's proposed allocation of the settlement toward past medical expenses.[6] The Medicaid program may negotiate with the plaintiff's lawyer and choose to accept an amount that is less than the subrogation lien, or it may seek judicial intervention, in which case the Medicaid program bears the burden of proving that the allocation of past medical expenses offered by the plaintiff is improper.[7] However, if the plaintiff obtains a total settlement less than $20,000, then state law dictates that the Medicaid program collects nothing.[8] In summary, it is the plaintiff's responsibility, and not any third party's, to work with the Medicaid program and make any payments toward the subrogation lien.

After her October 2017 rear-end collision, and during the months-long course of her medical treatment, the plaintiff hired a lawyer. The plaintiff's lawyer began pursuing a claim against the tortfeasor who caused the collision (or, more specifically, the tortfeasor's automobile insurer). As required by law, the plaintiff's lawyer notified the

---

[6] *See id*. If the Medicaid program fails to "appropriately respond to a notification of settlement," then the Medicaid program may only recover "the amount of the settlement the recipient has allocated toward past medical expenses." *Id.* § 9-5-11(e).

[7] *See id.* §§ 9-5-11(d)(2) and (3). *See also* Syllabus Points 7 and 8, *In re E.B.*, 229 W. Va. at 440, 729 S.E.2d at 275 (explaining the process of obtaining the Medicaid program's consent regarding the allocation of the portion of a settlement that represents a program recipient's past medical expenses).

[8] *See* W. Va. Code § 9-5-11(d)(4).

Medicaid program that the plaintiff was asserting a claim against a third party who was allegedly liable to pay some, or all, of the plaintiff's past medical expenses.

Additionally, on April 27, 2018, the plaintiff's lawyer sent a medical bill to the plaintiff's automobile insurer, defendant Auto Club, seeking reimbursement under the medical payments provision of the insurance contract. The parties agree that the two-page medical bill from a physical therapy clinic listed a series of visits by the plaintiff for medical services related to the collision. The total cost of the services from the clinic was $2,165.00, and the plaintiff demanded that Auto Club pay her this amount.

Auto Club responded and refused to pay the plaintiff the amount of the physical therapy clinic's bill. Among its reasons for denying the reimbursement, Auto Club noted that the plaintiff had health insurance through the Medicaid program. Auto Club declared that the plaintiff was not entitled to medical payments coverage because "no medical expenses have been incurred . . . as the bills submitted were paid by Medicaid."

Apparently unbeknown to the plaintiff's lawyer, and contemporaneous with Auto Club's rejection of the plaintiff's demand for medical payments coverage, the Medicaid program sent a letter to Auto Club.[9] The letter noted that the Medicaid program had so far "paid medical benefits on behalf of JESSICA A MOSER in the sum of $1,437.61" to three providers (including the physical therapy clinic) and that the program

---

[9] The letter was dated April 25, 2018.

6

was asserting a subrogation lien in that amount. The Medicaid program concluded that payment to the program should be remitted "[a]t the conclusion of this matter[.]" At some later date – the record is unclear when – and despite the fact that the plaintiff's claim against the tortfeasor had not been concluded, Auto Club paid $1,437.61 to the Medicaid program.

On October 23, 2019, the plaintiff settled with the tortfeasor who caused the rear-end collision for $60,000. The same day, the plaintiff's lawyer notified the Medicaid program of the settlement. The Medicaid program asserted that the plaintiff owed a balance of $1,547.29 toward the subrogation lien for past medical expenditures by the program. After negotiations with the plaintiff's lawyer, the Medicaid program agreed to accept $1,078.69 as full payment.

The plaintiff filed the instant case against Auto Club seeking, among other things, a declaratory judgment interpreting the medical payments provision in the Auto Club contract. The plaintiff asked for an order requiring Auto Club to provide medical payments coverage for the $2,165.00 in medical expenses that she "incurred" for physical therapy. On March 13, 2020, the plaintiff filed a motion for partial summary judgment, asserting that the medical payments provision should be interpreted in her favor. Auto Club countered with its own motion for summary judgment.

In an order dated June 5, 2020, the circuit court granted the plaintiff's motion for partial summary judgment and denied Auto Club's motion. The circuit court found that the term "incurred" in Auto Club's medical payments provision was clear and meant "'to

7

become liable or subject to.' 'Incurred' does not mean 'legally liable' to pay." As the Auto Club insurance contract was written, the circuit court concluded that an injured party "incurs" and becomes responsible for a medical expense "when the medical services are received, regardless of how, or even whether the injured person's obligation [to] the medical providers [is] later discharged." Additionally, the circuit court determined that the Medicaid program was not a party to the Auto Club insurance contract, and it found no language in the medical payments provision that permitted Auto Club to pay policy benefits to any entity other than the insured plaintiff. Further, it found that Auto Club should not have paid the Medicaid program because, under the contract between the plaintiff and Auto Club, the program did not incur any reasonable medical expenses because of bodily injuries while occupying a motor vehicle.

The circuit court found no dispute that the medical expenses from the plaintiff's physical therapy clinic were reasonably incurred and were necessary because of the plaintiff's bodily injuries suffered in the vehicle collision. The circuit court also noted that the Auto Club policy provided that the medical payments coverage was primary to any other insurance coverage if the plaintiff was driving a vehicle defined as "your car" under the policy – and the record indisputably showed the plaintiff's vehicle met that definition. The circuit court found that the plaintiff had entered into a contract, drafted by Auto Club, that gave her a reasonable expectation that Auto Club would pay her the full amount of her physical therapy bill, regardless of whether that bill was paid by another entity. Nevertheless, the circuit court found that Auto Club was entitled to a credit for any amounts

8

it paid to the Medicaid program for the physical therapy clinic expenses. Subsequently, Auto Club could only provide proof that it paid the Medicaid program $822.91 to satisfy the plaintiff's physical therapy bills. Hence, the circuit court ordered Auto Club to pay the plaintiff the unpaid balance of the $2,165.00 physical therapy bill, or $1,342.09.

The plaintiff then submitted a formal petition for attorney's fees. In an order dated September 4, 2020, the circuit court granted the petition and awarded the plaintiff fees and costs of $34,026.75. The circuit court also certified that its orders were immediately appealable.

Auto Club now appeals the circuit court's orders granting partial summary judgment to the plaintiff, denying Auto Club's motion for summary judgment, and awarding the plaintiff her attorney's fees and costs.

## II. Standard of Review

The circuit court's summary judgment order in this case declaring the rights of the parties was based purely on a question of law: the interpretation of an insurance contract. We review such an order de novo. *See* Syl. pt. 1, *Findley v. State Farm Mut. Auto. Ins. Co.*, 213 W. Va. 80, 576 S.E.2d 807 (2002) ("This Court reviews *de novo* the denial of a motion for summary judgment, where such a ruling is properly reviewable by this Court."); Syl. pt. 2, *Riffe v. Home Finders Assocs., Inc.*, 205 W. Va. 216, 517 S.E.2d 313 (1999) ("The interpretation of an insurance contract, including the question of whether the contract is ambiguous, is a legal determination that, like a lower court's grant of

9

summary judgement, shall be reviewed *de novo* on appeal."); Syl. pt. 3, *Cox v. Amick*, 195 W. Va. 608, 466 S.E.2d 459 (1995) ("A circuit court's entry of a declaratory judgment is reviewed *de novo*."); Syl. pt. 1, *Painter v. Peavy*, 192 W. Va. 189, 451 S.E.2 755 (1994) ("A circuit court's entry of summary judgment is reviewed *de novo*.").

On numerous occasions, we have discussed the standard of review regarding a lower court's award of costs and attorney's fees, and consistently found that review to be one for an abuse of discretion. *See Lewis v. Chafin*, 215 W. Va. 11, 14, 592 S.E.2d 790, 793 (2003) ("This Court reviews an award of attorney's fees under an abuse of discretion standard."); *Beto v. Stewart*, 213 W. Va. 355, 359, 582 S.E.2d 802, 806 (2003) ("The decision to award or not to award attorney's fees rests in the sound discretion of the circuit court, and the exercise of that discretion will not be disturbed on appeal except in cases of abuse."); *Hopkins v. Yarbrough*, 168 W. Va. 480, 489, 284 S.E.2d 907, 912 (1981) ("[I]n reviewing the ruling of a trial court with respect to costs and attorney fees in cases such as the one now before this Court, the standard is whether such ruling by the trial court constitutes an abuse of discretion.); Syl. pt. 2, *Bond v. Bond*, 144 W. Va. 478, 109 S.E.2d 16 (1959) ("[T]he trial [court] is vested with a wide discretion in determining the amount of . . . court costs and counsel fees; and the trial [court's] determination of such matters will not be disturbed upon appeal to this Court unless it clearly appears that [it] has abused [its] discretion."). However, because we have never expressed this standard of review in a new syllabus point, we do so now. We hold that this Court reviews an award of costs and attorney's fees under an abuse of discretion standard.

10

## III. Discussion

## A. The Meaning of "Incurred"

Auto Club's first assignment of error challenges the circuit court's determination that it was required to pay the plaintiff's physical therapy bill under the medical payments provision in her Auto Club insurance contract.[10] This Court has noted that the typical medical payments provision

> permits the insured to gain speedy reimbursement for medical expenses incurred as a result of a collision without regard to the insured's fault. It also assures coverage when the insured is involved in an accident with an uninsured or underinsured driver. And in situations where both parties to an accident are insured by the same insurer, it sometimes eliminates the need for costly litigation to determine fault.

*Ferrell v. Nationwide Mut. Ins. Co.*, 217 W. Va. 243, 249, 617 S.E.2d 790, 796 (2005). *See also*, 11 Steven Plitt, et al., Couch on Insurance § 158:2 (3d ed. 2021) ("Recovery under the medical payments clause of an automobile liability policy is completely independent of liability on the part of the insured.").

The medical payments provision of the parties' insurance contract provides that Auto Club "will pay reasonable medical expenses *incurred* for necessary medical and funeral services because of bodily injury[.]" (Emphasis added.) The parties' positions in

---

[10] There can be no dispute that this case is, as are most declaratory judgment actions regarding insurance policies, nothing more than a contract dispute. The "Automobile Insurance Policy" provided by Auto Club to the plaintiff clearly provides, on the first line of page 1, "THIS POLICY IS A LEGAL CONTRACT BETWEEN *YOU* AND *US*."

11

this case boil down to a dispute as to the meaning of the term "incurred." The term is not defined by Auto Club's insurance contract nor are there any statutory requirements governing medical payments coverage. Accordingly, we must look to the language of the contract to determine if coverage is available.

When a court interprets an insurance policy, the "[l]anguage in an insurance policy should be given its plain, ordinary meaning." Syl. pt. 1, *Soliva v. Shand, Morahan & Co., Inc.*, 176 W.Va. 430, 345 S.E.2d 33 (1986). "The words are to be taken in their ordinary and popular sense[.]" *Flaherty v. Fleming*, 58 W. Va. 669, 52 S.E. 857, 858 (1906). "We will not rewrite the terms of the policy; instead, we enforce it as written." *Payne v. Weston*, 195 W. Va. 502, 507, 466 S.E.2d 161, 166 (1995). "Where the provisions of an insurance policy contract are clear and unambiguous they are not subject to judicial construction or interpretation, but full effect will be given to the plain meaning intended." Syl., *Keffer v. Prudential Ins. Co.*, 153 W.Va. 813, 172 S.E.2d 714 (1970). When the parties dispute the meaning of a word in an insurance contract, courts assess the meaning of the word by viewing the policy from the viewpoint of a reasonable consumer of average intelligence not trained in the law or insurance business. "An insurance contract should be given a construction which a reasonable person standing in the shoes of the insured would expect the language to mean." *Soliva*, 176 W.Va. at 433, 345 S.E.2d at 35-36; *see also*, *Guerrier v. Mid-Century Ins. Co.*, 663 N.W.2d 131, 135 (Neb. 2003) ("Regarding words in an insurance policy, the language should be considered not in accordance with what the insurer intended the words to mean but according to what a

12

reasonable person in the position of the insured would have understood them to mean.”); *Polan v. Travelers Ins. Co.*, 156 W. Va. 250, 255, 192 S.E.2d 481, 484 (1972) (“It is well established in the law that the terms of an insurance policy should be understood in their plain, ordinary and popular sense, not in a strained or philosophical sense.”); *Thompson v. State Auto. Mut. Ins. Co.*, 122 W. Va. 551, 554, 11 S.E.2d 849, 850 (1940) (“In ascertaining the intention of the parties to an insurance contract, the test is what a reasonable person in insured’s position would have understood the words of the policy to mean.”).

The plaintiff asserts, and the circuit court found, that the dictionary definition of “incurred” means “[t]o become liable or subject to.” *Black’s Law Dictionary* 768 (6th Ed. 1990). The *Merriam-Webster Dictionary* similarly defines “incur” as “to become liable or subject to,” while the *Oxford English Dictionary* defines the term as “become subject to . . . as a result of one’s own behavior or actions.” Auto Club does not dispute this basic definition. Rather, it argues that an insured person like the plaintiff could not incur and be liable for an expense that might eventually paid, in whole or part, on her behalf by the Medicaid program. The plaintiff counters that an injured plaintiff incurs and becomes liable for a medical bill at the time the services are rendered, regardless of how, or even whether, the plaintiff’s obligation to the medical provider is later discharged. Hence, it is the plaintiff’s position that the circuit court correctly found that a medical expense is “incurred” when the medical service is rendered.

We find no error in the circuit court’s ruling because a reasonable, prudent person would consider the term “incurred” to be clear and unambiguous. The typical

13

consumer would understand that a medical expense is incurred at the time the services are rendered. Indeed, most medical providers state, before they perform a service, that a patient is responsible for any charges incurred regardless of whether insurance or some other party ultimately pays. When a patient's health insurer eventually resolves those medical charges, the health insurer is merely relieving the patient of a liability the patient has previously assumed. At no point does the health insurer become liable to the medical provider directly; instead, if the health insurer fails to pay any part of the claim, the medical provider will pursue the patient for recompense.

Importantly, the contract question presented by Auto Club is not a novel one. Since insurance companies began incorporating medical payments provisions into their policies in the late-1940s,[11] they have repeatedly made the same arguments Auto Club

---

[11] An *American Law Reports* summary from 1955 noted that

> Comparatively recently, many liability insurers have included in their policies, at a small extra premium, provisions under the terms of which the insurer undertakes to pay for medical or funeral expenses, within specified limits, incurred by persons injured or killed as a result of the condition or use of the property in connection with which the liability insurance is written.

W.E. Shipley, *Coverage, construction, and effect of medical payments and funeral expense clauses of liability policy*, 42 A.L.R.2d 983 § 2 (1955). The medical payments provision displaced "first-aid" clauses, "under which the person insured against liability is authorized to provide limited medical care in order to mitigate damages." *Id.* § 1; *see, e.g.*, *Gilbert v. Am. Cas. Co.*, 126 W. Va. 142, 27 S.E.2d 431, 434 (1943) (examining a policy provision where "the company shall . . . pay . . . expenses incurred by the Insured, in the event of bodily injury, for such immediate medical and surgical relief to others as shall be imperative at the time of accident."); *Chitwood v. Farm Bureau Mut. Auto. Ins. Co.*, 117

Continued . . .

14

offers in this case. Jurisdictions considering those arguments have weighed language identical to that used by Auto Club, and they have consistently ruled against the insurers and found that the term "incurred" is clear. These jurisdictions have found that a person has "incurred" a medical expense at the time medical services are rendered and that an insurer is liable to the insured for the entire expense under the medical payments provision, regardless of whether or how the medical expense was ultimately paid. For instance, in *Samsel v. Allstate Insurance Co.*, 59 P.3d 281, 286 (Ariz. 2002), the Supreme Court of Arizona found that even though the insured's medical expenses resulting from an automobile accident were subsequently resolved by her HMO, her automobile medical payments insurer was contractually liable to pay her the full value of the medical expenses. The *Samsel* court, reviewing cases interpreting medical payments provisions back to the 1950s, explained:

> The narrow rule to be extracted from all of these cases is that "incurred" or "actually incurred" language does not bar an insured who became liable for expenses from recovery simply because "of the availability of collateral means of discharging his liability therefor so as to have relieved him of the need to pay the charges personally."

*Id.* (quoting *Hollister v. Gov't Emps. Ins. Co.*, 224 N.W.2d 164, 166 (Neb. 1974)).

Critically, the *Samsel* court concluded with the following interpretation of the medical payments provision:

W. Va. 797, 188 S.E. 493, 493-94 (1936) (same). A "first-aid" clause permitted an insured to incur the costs of "immediate medical and surgical aid 'to others,'" so as to "minimize the damages for which the company may be liable for personal injuries to others under the public liability coverage of its policy[.]" *Id.*

15

> The undefined phrase "actually incurred by the insured" is interpreted to mean actually incurred for treatment of the insured rather than actually incurred for treatment for which the insured is directly legally liable.

59 P.3d at 291. Numerous other courts have examined the word "incurred" in insurance policies and reached the same conclusion. *See*, *e.g.*, *Dutta v. State Farm Ins. Co.*, 769 A.2d 948, 961 (Md. 2001) (although insured's medical expense was resolved by his HMO, automobile insurer was contractually liable because "the expense need merely be incurred—regardless of whether it is the insured, the insured's health insurer, the insured's health maintenance organization, or any other collateral source of benefits, who ultimately pays the bill."); *Shanafelt v. Allstate Ins. Co.*, 552 N.W.2d 671, 676 (Mich. Ct. App. 1996) ("Obviously, plaintiff became liable for her medical expenses when she accepted medical treatment. The fact that plaintiff had contracted with a health insurance company to compensate her for her medical expenses, or to pay directly the health care provider on her behalf, does not alter the fact that she was obligated to pay those expenses."); *Curts v. Atl. Mut. Ins. Co.*, 587 A.2d 1283, 1287 (N.J. Super. Ct. App. Div. 1991) (holding that an automobile accident victim who received medical care as part of a prepaid nursing home plan "incurred" medical expenses payable under automobile insurance policy); *Holmes v. Cal. State Auto. Assn.*, 185 Cal. Rptr. 521, 524 (Cal. Ct. App. 1982) (insured whose hospital costs were covered by Medicare benefits still incurred medical expenses "upon the rendition of services" triggering automobile insurance medical payments provision); *Heis v. Allstate Ins. Co.*, 436 P.2d 550, 552 (Or. 1968) (insured, whose hospital expenses were paid by a group health plan, was "entitled to recover under her [medical payments] policy

16

with defendant without deducting the amount paid by the [group health plan] for her medical services."); *Collins v. Farmers Ins. Exch*., 135 N.W.2d 503, 507 (Minn. 1965) (after sustaining injuries in automobile accident, negotiations by plaintiff's counsel resulted in plaintiff paying medical providers less than the amount billed; nevertheless, the court required the automobile insurer to compensate plaintiff for the full amount of the medical bills "incurred." "The definition of incur is 'to become liable for,' as distinguished from actually 'pay for.' This definition has been well fixed and delineated in the case law, and we are compelled to conclude that the insurer, when it used that language, intended to bind itself to pay the amount the insured became liable for, not the amount he paid as a result of a collateral transaction."); Syl. pt. 2, *Masaki v. Columbia Cas. Co*., 395 P.2d 927, 927 (Haw. 1964) ("Where insured's automobile policy provided for payment of reasonable expenses incurred for necessary medical and hospital services for treatment of injuries . . . insured who received injuries in an automobile accident was entitled to the reasonable cost of the medical and hospital services furnished him through his membership in a pre-paying health plan."); *Feit v. St. Paul Fire & Marine Ins. Co*., 27 Cal. Rptr. 870 (Cal. Ct. App. 1962) (insured could recover the entirety of medical expenses under medical payments clause in automobile insurance policy, despite expenses being initially paid under insured's membership in a pre-paid health plan); *Am. Indem. Co. v. Olesijuk*, 353 S.W.2d 71, 73 (Tex. Civ. App. 1961) (passenger "incurred" medical charges for treatment that automobile insurer was required to compensate, notwithstanding that the United States Navy paid the charges. "The fact that the insured has other arrangements for the reimbursement of his expenses does not operate to relieve [the insurance company] of its obligation as expressed

17

in its contract in plain, certain and unambiguous language.");[12] *Kopp v. Home Mut. Ins. Co.*, 94 N.W.2d 224, 226 (Wis. 1959) (insured submitted hospital bill to his automobile insurer that indicated on its face the bill was paid by Blue Cross and insured owed nothing; still, the court found the hospital bill was "incurred" and insured was entitled to reimbursement for the full amount of the bill under automobile insurance's medical payments provision); *see also Hollister*, 224 N.W.2d at 165 (interpreting an insurance policy for hospital and medical services; active-duty solder sought payment of medical expenses charged by a private hospital but paid by the United States Army; court concluded the soldier had "incurred" the expenses because, "[o]rdinarily the term 'incurred' is construed to mean that one has become obligated or liable for the expense involved.").

---

[12] *But see Lefebvre v. Gov't Emp. Ins. Co.*, 259 A.2d 133, 135 (N.H. 1969) (military serviceman's wife was injured in an accident, treated at a U.S. Naval Hospital and, "[e]xcept for $31.50 she was, as the wife of a serviceman, entitled to receive these services without charge;" court found that because the wife "never became liable to pay more than $31.50 for the medical services provided . . . by the Government," she was "entitled to no more than this amount" under her medical payments provision); *Irby v. Gov't Emp. Ins. Co.*, 175 So. 2d 9, 11-12 (La. Ct. App. 1965) (active duty member of the Coast Guard, injured in an automobile accident, was treated in "a local United States Public Health Service Hospital" at no cost; court found that because the servicemember "never has been under any obligation to pay the government for the medical and hospital services he received," he had not "incurred" a medical expense payable by under his medical payments insurance provider); *Gordon v. Fid. & Cas. Co. of N. Y.*, 120 S.E.2d 509, 513 (S.C. 1961) (career soldier, who was struck by an automobile and treated at a military hospital, stipulated his medical care was free; court found that because there was "no obligation on the part of the respondent to pay for the hospitalization he received at Fort Jackson hospital, he 'incurred' no expense within the meaning of" his medical payments provision).

18

Relevant to the instant case, the Supreme Court of Minnesota, in *Stout v. AMCO Ins. Co.*, 645 N.W.2d 108 (Minn. 2002), specifically found that an individual whose medical expenses from an auto accident were paid by the state Medicaid program had still "incurred" a medical expense equal to the full amount charged by the provider. The court found "that the medical expense incurred by Stout is the full amount reflected on his medical bills, and not the amount that was paid in satisfaction of those bills as the result of collateral transactions involving Stout's health insurer." *Id.*, 645 N.W.2d at 113.[13]

---

[13] Auto Club cites as authority three cases on the meaning of "incurred" that are inapposite. The facts and policy language in each of these cases are easily distinguishable from the instant case. First, Auto Club cites to *Newbury v. State Farm Fire & Casualty Insurance Company of Bloomington, Ill.*, 184 P.3d 1021 (Mont. 2008), for the proposition that it is not "objectively reasonable" under its policy for the plaintiff to expect coverage for her medical expenses because her expenses were eventually paid by the Medicaid program. In *Newbury*, the insured's expenses were paid by a workers' compensation carrier. Auto Club fails to note, however, that the *Newbury* court found the insured had no objectively reasonable expectation of medical payments coverage because the insurance policy at issue expressly stated there was "no coverage 'to the extent workers' compensation benefits are required to be payable.'" *Id.* at 1023. In the instant case, the Auto Club medical payments provision contains no such limiting language.

Second, Auto Club cites *Atkins v. Great American Insurance Company*, 189 S.E.2d 501 (N.C. 1972) for the proposition that an insured cannot seek medical benefits coverage when no medical expense has been incurred. However, the policy at issue in *Atkins* required an insured to incur medical expenses within one year of an accident, and the *Atkins* plaintiff was not entitled to coverage because she never had medical services performed, never received a bill for services, and never paid for such services, within the one-year period.

Finally, Auto Club relies upon *State Farm Mutual Automobile Insurance Company v. Bowers*, 500 S.E.2d 212 (Va. 1998). In *Bowers*, the insured submitted a claim against his auto policy's medical payments provision for an entire medical bill totaling $1,586. The insurance company accidentally paid the insured $31,586, and when the company asked for a return of the $30,000 overpayment, the insured said "he had spent the

Continued . . .

19

One of the leading treatises on insurance law, *Couch on Insurance*, also notes there is no ambiguity in a medical payments provision written like the one used by Auto Club in its contract. The treatise finds the law to be clear: when an insured "incurs" a medical expense because of an automobile accident, then the entire expense must be paid to the insured by the automobile's insurer under a medical payments provision:

> The medical payments provision most commonly requires that the insured have "incurred" or "actually incurred" medical expenses. The clause contemplates a liability thrust upon the insured by act or operation of law. Stated otherwise, expenses are incurred within medical payments coverage only when a person has become obligated to pay for them.

> Additionally, the requirement that bills be "incurred" or "actually incurred" does not mean that the insured must have paid his or her bills in full.

11 Steven Plitt, et al., *Couch on Insurance* § 158:10.

We are bound by the terms of Auto Club's insurance contract with the plaintiff, and we can neither add to nor delete language from that contract at the insistence of a party. "It is not the right or province of a court to alter, pervert or destroy the clear meaning and intent of the parties as expressed in unambiguous language in their written

---

entire overpayment and refused to repay the balance." *Id.* at 213. Thereafter, the insurance company sued seeking both the overpayment as well as a declaration that it did not have to reimburse the insured amounts that were offset by the insured's health-care providers under an agreement with the insured's health insurance plan. The Virginia court relied upon a Virginia statute – one not found in our law – that defined when a medical bill is "incurred" and found the insured was never "'legally obligated to pay' the amounts written off by the providers." *Id.* at 214 n.4. Hence, the *Bowers* court found the amounts the insured "'incurred' were the amounts that the health-care providers accepted as full payment for their services rendered to him." *Id.*

contract or to make a new or different contract for them." Syl. pt. 3, *Cotiga Dev. Co. v. United Fuel Gas Co.*, 147 W. Va. 484, 128 S.E.2d 626 (1962). "So long as an otherwise valid contract does not contravene some principle of law or public policy, it must stand and become operative as the deliberate act of the parties." *Id.* at 493, 128 S.E.2d at 633.

As written, the contract provision required Auto Club to pay any reasonable medical expense "incurred" by the plaintiff because of a bodily injury sustained in a collision. Clearly, when Auto Club drafted the medical payments provision, it intended to bind itself to pay the amount the plaintiff initially became liable to pay her medical providers, and not the amounts that were eventually paid in a collateral transaction on the plaintiff's behalf. Under a common sense understanding of the plain language of the contract, the plaintiff "incurred" medical expenses at the time her physical therapy services were rendered, and those expenses were subject to payment under the medical payments provision. Auto Club does not dispute that the plaintiff suffered injuries or that her medical treatment was reasonable and necessary. Instead, it simply refused to pay the plaintiff's physical therapy bill because the plaintiff was a recipient of medical insurance through the Medicaid program. Auto Club thereafter sought to excuse its nonpayment by paying a lesser amount to the Medicaid program. Auto Club elected to pay money toward the Medicaid subrogation lien without consulting the plaintiff and despite it being the plaintiff's exclusive statutory duty to address the lien at the conclusion of her claim against the tortfeasor. *See* W. Va. Code § 9-5-11(d)(1). Importantly, Auto Club does not contend, nor do we find, that the medical payments provision contains any exclusionary or limiting

21

language permitting Auto Club to withhold payment, reduce the payment, or make payment to a stranger to the contract (like the Medicaid program). Auto Club drafted the language of the insurance contract, and the power lies with Auto Club to change that language – in the future – if it so chooses.

Accordingly, we find no error in the circuit court's decision to grant partial summary judgment to the plaintiff, and to deny Auto Club's motion for summary judgment.

## B. Costs and Attorney's Fees

Auto Club's second assignment of error challenges the circuit court's decision to award $34,026.75 in costs and attorney's fees to the plaintiff.

This Court has long held that where "an insurance carrier refuses to pay any type of first-party claim" and the first-party policyholder substantially prevails against the insurance carrier in litigation, the policyholder is entitled to recover their costs, attorney's fees, and consequential damages resulting from the insurance carrier's delay in payment of the claim. *Miller v. Fluharty*, 201 W. Va. 685, 693-94, 500 S.E.2d 310, 318-19 (1997). Decades ago, Justice Neely noted that courts nationwide have adopted fee-shifting rules in insurance contract interpretation cases "in recognition of the fact that, when an insured purchases a contract of insurance, he buys insurance—not a lot of vexatious, time-consuming, expensive litigation with his insurer." *Hayseeds, Inc. v. State Farm Fire & Cas.*, 177 W. Va. 323, 329, 352 S.E.2d 73, 79 (1986). Accordingly, we see no error in the circuit court's decision to award fees and costs to the plaintiff.

22

Auto Club also challenges the means by which plaintiff's counsel calculated their fees. The record shows that two lawyers worked on the plaintiff's case. Auto Club asserts that the request for attorney's fees submitted to the circuit court contained "excessive time entries, duplicative entries of multiple attorneys performing the same task, and block billing entries that did not actually specify the legal task being performed." Auto Club suggests that the underlying case was not so complex as to require both of the plaintiff's lawyers to review all case filings, despite the case record showing Auto Club was also represented by two lawyers.

Auto Club made its assertions regarding the billing entries by plaintiff's counsel to the circuit court. The record shows that the plaintiff's lawyers responded to each assertion by Auto Club, and, as a result, reduced their original fee request of $35,082.50 to $34,026.25. The circuit court considered the parties' positions in light of our seminal holding in *Aetna Casualty & Surety Company v. Pitrolo*, 176 W. Va. 190, 342 S.E.2d 156 (1986), where we held in Syllabus Point 4:

> Where attorney's fees are sought against a third party, the test of what should be considered a reasonable fee is determined not solely by the fee arrangement between the attorney and his client. The reasonableness of attorney's fees is generally based on broader factors such as: (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the undesirability of the case; (11) the nature

23

and length of the professional relationship with the client; and
(12) awards in similar cases.

The record shows the circuit court properly performed its fee analysis under *Pitrolo* and concluded that the plaintiff's attorneys had conducted the litigation in an efficient manner. The circuit court acknowledged that the plaintiff's lawyers' entries, such as for block billing, made it more difficult to assess whether the time spent on particular tasks was reasonable. However, the circuit court ultimately determined the fee request was similar to awards made in other cases and was "imminently reasonable." On this record, we see no abuse of discretion by the circuit court in the amount of costs and attorney's fees it awarded.

## IV. Conclusion

As set forth above, we find no error in the circuit court's orders granting partial summary judgment to the plaintiff, denying summary judgment to Auto Club, and awarding the plaintiff her attorney's fees.

Affirmed.

24