VIRGINIA FARM BUREAU MUTUAL INSURANCE COMPANY

V.

LISA MICHELLE HODGES

Record No. 881145

November 10, 1989

Present: Carrico, C.J., Compton, Stephenson, Russell, Thomas,* Whiting, and Lacy, JJ.

---

* Justice Thomas participated in the hearing and decision of this case prior to the effective date of his resignation, November 1, 1989.

*Michaux Raine, III (Raine & Perdue*, on briefs), for appellant.
*Eric H. Ferguson (Ralph B. Rhodes; Hutcherson & Rhodes*, on brief), for appellee.

Justice Whiting delivered the opinion of the Court.

This case involves the interpretation of a medical payment provision contained in three automobile insurance policies. The provision in question limits the insurance company's liability to the payment of "all reasonable expenses incurred within one year from the date of accident for necessary medical . . . services." We decide whether certain anticipated medical expenses were "incurred" within one year of the accident.

Lisa Michelle Hodges injured her right arm in an automobile accident on June 14, 1986. Virginia Farm Bureau Mutual Insurance Company (the insurance company) provided medical payment coverage to Hodges as an insured under two automobile liability policies, and as a claimant under a third automobile liability policy.

On March 3, 1987, Dr. Henry T. Brobst, a plastic and reconstructive surgeon, examined Hodges on referral from another physician who had treated Hodges for her injuries. Dr. Brobst was to determine whether he could improve the appearance of the scars on Hodges's right arm which resulted from the accident. During the examination, Hodges told Dr. Brobst that the insurance company informed her that it would not be liable for any of his surgical fees unless he completed the procedures within one year of her accident.

On March 16, 1987, Dr. Brobst wrote to Hodges's attorney advising him that surgery could improve the appearance of the scars on Hodges's right arm. However, he advised that because Hodges's arm had only recently healed, the surgery, which involved a number of separate procedures spaced approximately two months apart, could not be completed within one year from the date of the accident. He estimated his fee as $9,000 to $10,000, and that much, or slightly more, for hospital charges.

On June 11, 1987, Dr. Brobst again wrote to Hodges's attorney:

> Miss Lisa Michelle Hodges, who was initially examined by me in the office on March 16, has made a contractual agreement through her lawyer to me for surgery to be performed in the future to revise multiple scars involving the right forearm, elbow and wrist. This surgery, as yet, has not been done and will be scheduled in the future. The estimated cost of both surgery and hospital is ten thousand dollars ($10,000).
>
> If any additional questions arise regarding this, please let this office know.

Doctor Brobst apparently erred in referring to the date as March 16. All other evidence in the case indicates that the only time he saw Hodges was on March 3, 1987.

On June 12, 1987, Hodges wrote and signed the following memorandum:

> I hereby agree to pay Dr. Henry T. Brobst and the hospital where Dr. Henry T. Brobst performs the above surgery the sum of $10,000 to revise multiple scars on my right forearm, elbow, and wrist at such time as the above surgery is performed. Further, I agree and obligate myself for Dr. Henry T. Brobst to perform the above surgery at such time as Dr. Henry T. Brobst elects.

The record does not indicate what became of this memorandum after Hodges signed it. The original was filed as one of Hodges's exhibits but the appellate record fails to show who identified it as an exhibit or where it had been prior to its introduction in evidence.

On August 26, 1987, Hodges filed an action at law against the insurance company in which she "prays that the Motion for Judg-

ment be granted against the defendant in the amount of the medical bills for the surgery [to be provided by Dr. Brobst] that has been contracted for . . . ." In depositions taken by the insurance company on February 18, 1988, Hodges testified that she had not seen Dr. Brobst since his initial examination on March 3, 1987, and that he had not billed her for the recommended surgery. However, she described Dr. Brobst's two letters and her memorandum as the basis for her liability to him.

Dr. Brobst testified in another deposition taken by the insurance company that Hodges's condition required his treatment to be delayed until approximately 18 months after June 1987, when there would be "enough softening and resolution of tissue reaction" to permit the procedures. He also testified that he felt that his letter of June 11, 1987 bound him to perform the reconstructive surgery for $10,000; however, he did not think Hodges was obligated to him because he had no further contact with Hodges or her attorney after he sent the letter.

The final order was entered on August 10, 1988.[1] In the final order, the trial court construed the word "incurred," contained in the medical payment provisions of the policy, "to include the cost of treating future medical needs diagnosed within the specified time period, where the nature of the injury or treatment requires that the services be rendered beyond the time limit." Accordingly, the court ordered the insurance company to satisfy the judgment rendered "not to exceed $10,000 . . . by payment to the plaintiff of such sums as she is billed for the medical services performed."

■ Although she did not pay Dr. Brobst within the year following the accident, Hodges argues that she was contractually obligated to do so. Therefore, she claims that she "incurred" the expense of his recommended surgery.

■ Hodges, however, was not contractually bound. Dr. Brobst's letter of March 16, 1987 was a mere offer to do the surgery for $10,000. A binding contract is not formed until the offeree communicates an acceptance to the offeror. 1 S. Williston, A Treatise on the Law of Contracts § 66 (3d ed. 1957 & Supp. 1989); *see Levy v. Beach Inv. Corp.*, 212 Va. 19, 20, 181 S.E.2d 607, 607-608 (1971). No acceptance by Hodges or her attorney was ever communicated to the doctor. Indeed, Dr. Brobst testified that he

---

[1] Although the final order recites that the case was submitted for decision "upon the evidence heard Ore Tenus, upon the depositions, exhibits, transcripts of evidence as agreed to by counsel . . .," the record does not disclose that any evidence was taken *ore tenus*.

had no further contact with Hodges or her attorney after his offer. Therefore, we conclude that no contract was made during the first year after Hodges's accident.

■ As an alternate contention, Hodges claims that her proof of the necessity of the treatment and the communication of Dr. Brobst's diagnosis to her during the year following her accident suffices to establish that his quoted fee was an "incurred" medical expense within the meaning of the policy. An expense can only be "incurred", however, when one has paid it or become legally obligated to pay it. Moreover, "incur" is defined in Webster's Third New International Dictionary 1146 (1986) as follows: "become liable or subject to . . . ."

During the first year after her accident, Hodges did not pay Dr. Brobst nor was she contractually obligated to pay him. She could have decided to go to another doctor or not have the surgery at all. Therefore, she did not "incur" the expense of Dr. Brobst's suggested surgical procedure within the meaning of the policy.[2]

■ We construe insurance policies in favor of coverage if their language is ambiguous. *CUNA Mutual Insurance Society v. Norman*, 237 Va. 33, 36, 375 S.E.2d 724, 725 (1989); *United Services Auto. Assoc. v. Webb*, 235 Va. 655, 657, 369 S.E.2d 196, 198 (1988); *White Tire Distributors, Inc. v. Pennsylvania National Mutual Casualty Ins. Co.*, 235 Va. 439, 441, 367 S.E.2d 518, 519 (1988). If the language is unambiguous, however, we do not resort to rules of construction but give the language its plain meaning. *Webb*, 235 Va. at 657, 369 S.E.2d at 198; *Atlas Underwriters, Ltd. v. Meredith-Burda, Inc.*, 231 Va. 255, 259, 343 S.E.2d 65, 68 (1986). In our opinion, the language unambiguously requires that Hodges pay or be legally obligated to pay these medical expenses within the one-year period in order for them to have been "incurred" within the terms of the policy.

Accordingly, we will reverse the judgment of the trial court and enter final judgment for the insurance company.

*Reversed and final judgment.*

---

[2] A number of courts have dealt with this issue. Most of them have held that the expense must have been paid or contracted for within the limitation period of the policy at issue. 13A G. Couch, Cyclopedia of Insurance Law § 48:72 (2d ed. 1982).