## CIRCUIT COURT OF THE CITY OF NORFOLK

Romeo

v.

Glasser et al.

November 22, 1994

Case No. L94-1348

By Judge John C. Morrison, Jr.

This matter is pending on the Motion for Judgment filed by Paul J. and Nancy E. Romeo ("Plaintiffs") and the Demurrers of the land surveyor Beck Associates, P.C. ("Beck Associates") and First American Title Insurance Company ("First American"). The law office of Glasser and Macon, P.C., also a defendant in this case, has made no motion at this time.

Plaintiffs allege that Beck Associates negligently prepared a site plan and survey of Plaintiffs' property by failing to discover a fifteen-foot easement held by Virginia Electric and Power Company ("Virginia Power"). Similarly, Plaintiffs claim that Glasser negligently conducted the closing on the Plaintiffs' purchase of their property by failing to discover and inform Plaintiffs of the aforementioned easement. Lastly, Plaintiffs assert that First American breached its contract for title insurance when it refused to reimburse Plaintiffs for the cost of relocating underground cables located on the fifteen-foot easement.

Beck Associates and First American have each filed a demurrer and argue that the Plaintiffs' Motion for Judgment should be dismissed because it fails to state a cause of action for which relief can be granted. Beck Associates argues that by statute in Virginia, it was under no duty to discover the fifteen-foot easement held by Virginia Power. First American argues that the insurance policy it issued to Plaintiffs expressly took exception to the Virginia Power easement. First American also made a Motion to Crave Oyer which was sustained at the hearing pursuant to an agreement by the parties. Therefore, the Title Policy and all of its terms,

exceptions and provisions are incorporated into and made a part of Plaintiffs' Motion for purposes of ruling on First American's Demurrer.

The facts are as follows. On July 12, 1990, Plaintiffs purchased a parcel of property from Brandermill Development, Inc. Prior to Plaintiffs' purchase, Virginia Power acquired a fifteen-foot easement over the property for the operation and maintenance of underground cables. The fifteen-foot easement was not recorded on the record subdivision plat because it was acquired after such plat was recorded. (The record subdivision plat is simply the original plat filed by Brandermill Development, Inc.) However, the easement was recorded in Deed Book 2266, page 215, and shown to be south of and parallel to the rear property line.

Before Plaintiffs purchased the property, Beck Associates prepared a physical survey and site plan of the property at Plaintiffs' request. Beck Associates revised the site plan two years after Plaintiffs purchased the property. Neither the survey nor the site plan revealed the fifteen-foot easement. Similarly, Glasser, who conducted the closing on the purchase of the Property at their law offices, failed to inform the Plaintiffs about the Virginia Power easement. Consequently, Plaintiffs were forced to pay $11,250 to relocate underground cables in order to complete the construction of their house.

Plaintiffs' policy of title insurance, issued by First American, took exception to the "[e]asement granted to Virginia Electric and Power Co. appearing of record in Deed Book 2266, at page 215, 15 feet along rear."

## I. *First American's Demurrer*

First American contends that, as a matter of law, they are not liable for the cost of moving the underground cables because they took exception to the fifteen-foot easement in Schedule B of Plaintiffs' title policy. Schedule B reads as follows:

> This policy does not insure against loss or damage by reason of the following exceptions . . . .
>
> 8. Easement granted to Virginia Electric and Power Company appearing of record in Deed Book 2266, at page 215, fifteen feet along rear.

Plaintiffs contend that "along rear" means immediately adjacent to the rear. First American, relying on *Webster's Ninth New Collegiate Dictionary*, argues that "along rear" simply means parallel to the rear, notwithstanding location. *Webster's* defines the word "along" as follows:

Along . . . 1: in a line parallel with the length or direction of 2: in the course of 3: in accordance with. *Webster's* p. 73.

First American further asserts that the meaning of "along rear," as used in the title policy, is clear because the exception specifically sets forth the deed book and page where a plat that displays and describes the exact location of the fifteen-foot easement was recorded.

The law related to insurance policy interpretation is well settled in Virginia. "An insurance policy is a contract" to which familiar principles of contract construction apply. *Graphic Arts Mut. Ins. Co. v. C. W. Warthen Co.*, 240 Va. 457, 459, 397 S.E.2d 876, 878 (1990). "Each phrase and each clause of an insurance contract 'should be considered and construed together . . . .' " *Floyd v. Northern Neck Ins. Co.*, 245 Va. 153, 158, 427 S.E.2d 193, 198 (1993) (citations omitted). Insurance policies are construed in favor of coverage if their language is ambiguous. *Virginia Farm Bureau Mut. Ins. Co. v. Hodges*, 238 Va. 692, 696, 385 S.E.2d 583, 587 (1989). "If the language is unambiguous, however, we do not resort to rules of construction but give the language its plain meaning." *Id.* at 696, 385 S.E.2d at 587 (citations omitted).

According to the above principles as well as the rules of demurrer, *see* Sinclair, *Virginia Civil Procedure*, § 9.6 (2d ed. 1992), the phrase "along rear" is ambiguous and, standing alone, would have to be construed to mean immediately adjacent to the rear, an interpretation most favorable to Plaintiffs. The above phrase does not stand alone in the title policy exception, however. The words "fifteen feet along rear" are part of a clause that specifically sets forth the deed book and page where a plat which displays and describes the exact location of the fifteen-foot easement was recorded. The meaning of the aforementioned phrase is unquestionable when the title policy exception is construed as a whole, in accordance with the principles of contract interpretation. This conclusion conforms to the Virginia Supreme Court's reasoning in *Andrews v. American Health and Life Ins.*, 236 Va. 221, 372 S.E.2d 399 (1988).

In *Andrews*, the court held that the phrase "nervous disorder," as used in the policy, meant physical, not mental, disorder of the nerves. The Court reasoned as follows:

[t]here are a number of definitions of "nervous" in *Webster's Third New International Dictionary* 1519 (1986). One is "of, relating to the nerves: originating in or affected by the nerves"; yet another is "tending to produce nervousness or agitation."

Thus, we conclude that the phrase "nervous disorder," standing alone, is a general term which might include physical or mental disorders, or both.

We must, however, construe the phrase in accordance with the maxim *noscitur a sociis*. The principal instructs that "the meaning of a word takes color and expression from the purport of the entire phrase of which it is a part, and it must be read in harmony with its context." [Citations omitted.]

*Andrews*, 236 Va. at 224, 372 S.E.2d at 402. Like the phrase "nervous disorder," the phrase "along rear," standing alone has several meanings. However, when such words are read in the context of the sentence of which they are a part, only one meaning is appropriate. The title policy exception was clearly to the fifteen-foot Virginia Power easement appearing of record on page 215 of Deed Book 2266. Accordingly, First American's Demurrer is sustained.

## II. *Beck Associates' Demurrer*

Beck Associates contends that it was under no duty to discover the fifteen-foot easement and that Plaintiffs have no basis for their claim to the contrary. Beck Associates offers the Rules and Regulations promulgated by the Commonwealth of Virginia Board for Architects, Professional Engineers, Land Surveyors and Landscape Architects ("Board Regulations") in support of its demurrer. (These regulations were issued pursuant to Virginia General Statutes Title 54.1, Chapters 1-4, and Title 13.1, Chapter 7.)

The Board Regulations clearly set out the duties imposed on land surveyors in performing land boundary surveys. Section 5.10 is labeled "[m]inimum standards and procedures for land boundary surveying" and states that "[i]t is not the intent of this regulation to require the professional to research the question of title or encumbrances on the land involved." Surveyors are only required to report "easements and other encumbrances set forth on the record subdivision plat, and those otherwise known to the professional." Board Regulations, § 5.10. Since the fifteen-foot easement was not set forth on the record subdivision plat, Beck Associates, according to the Board Regulations, had no duty to discover such easement in performing the land boundary survey. Nevertheless, it is not clear whether the Board Regulations limit the duty of surveyors to discover easements when they prepare site plans. Consequently, the Court

cannot conclude as a matter of law that Beck Associates had no duty to discover the fifteen-foot easement. Beck Associates' Demurrer is, therefore, overruled.