PRESENT:  Goodwyn, C.J., Powell, Kelsey, McCullough, and Chafin, JJ., and Russell and Millette, S.JJ.

AV AUTOMOTIVE, LLC, ET AL.,

v.  Record No. 210320

BETELEHEM GEBREYESSUS

OPINION BY
JUSTICE STEPHEN R. McCULLOUGH
September 15, 2022

FROM THE CIRCUIT COURT OF FAIRFAX COUNTY
Dontaè L. Bugg, Judge

Appellants AV Automotive, LLC, AV Imports, LLC (collectively, "AV Automotive"), and Geneva Enterprises, Inc. ("Geneva") appeal the circuit court's decision to impose sanctions against them under Code § 8.01-271.1, awarding all attorney's fees claimed by Betelehem Gebreyessus.

I.  BACKGROUND

Gebreyessus was employed by AV Automotive as a vehicle salesperson.  AV Automotive owns an Audi dealership in Arlington ("Audi Arlington"), which is a private dealership in the Rosenthal Automotive Group ("Rosenthal Group").  Geneva manages the Rosenthal Group dealerships, including Audi Arlington.

AV Automotive and Geneva (collectively, the "Appellants") maintained agreements with Audi of America, Inc. ("Audi USA") relating to the sale of Audi vehicles.  Under one such agreement, Audi USA provided bonus payments to dealers who met certain benchmarks with respect to the sale of vehicles and positive customer survey ratings.  From April 1, 2016, to September 30, 2017, Audi USA paid AV Automotive approximately $700,000 in bonuses.

In early 2018, the Appellants discovered a fraudulent scheme to manipulate customer reviews for the incentive program.  As a result of this scheme, Gebreyessus was terminated.  In a February 2019 Complaint, the Appellants alleged that the scheme was perpetrated by Donna

Bavely, Brandon Preske, and Gebreyessus.[1]  The Appellants stated that Bavely and Gebreyessus gained unauthorized access to the Audi customer survey system, submitted falsified positive customer reviews, and arranged for customers who had a negative experience to not receive the email invitation to submit a review.  The Appellants asserted that the falsified positive reviews resulted in Audi Arlington employees receiving additional compensation.

The Appellants alleged that Gebreyessus failed to meet the requirements for a bonus payment associated with customer surveys in March 2016, and that in April 2016, Gebreyessus and Bavely began fabricating customer surveys.  The Appellants maintained that Gebreyessus instructed Bavely to either send real customer surveys or surveys to false email addresses, based on Gebreyessus' experiences with individual customers.  The Appellants alleged that Bavely used the false email addresses to complete false positive survey results.  The Appellants maintained that Gebreyessus and Bavely continued this scheme together from April 2016 until Bavely was terminated in September 2017.

The Appellants further asserted that Gebreyessus and Bavely submitted false internal employee surveys as a part of a plan to get Sean Egnew, the General Sales Manager, fired from Audi Arlington and replace him with Gebreyessus.  The Appellants further allege that Bavely created and emailed an anonymous survey for Audi Arlington sales employees.  Gebreyessus convinced the other sales employees to include false and negative information about Egnew in their responses.  As a result, Egnew was demoted and later left the Rosenthal Group.

---

[1] Only Gebreyessus and Preske were named as defendants in the February 2019 Complaint.  Bavely, the daughter of a former AV Automotive president, was identified as an "un-named co-conspirator" in AV Automotive's initial and subsequent complaints.  At all times relevant to this case, Preske was Bavely's boyfriend.  He was never employed by AV Automotive or Geneva.  All claims against Preske were dismissed with prejudice on demurrer.

In their February 2019 Complaint, the Appellants alleged fraud, breach of fiduciary duty, tortious interference with a contractual relationship or business expectancy, and business conspiracy against Gebreyessus. Each count alleged that AV Automotive had been penalized by Audi USA and would have to repay approximately $700,000 in bonuses (the "Audi Penalty"). However, in a letter dated April 5, 2019, Audi USA advised AV Automotive's counsel that Audi USA "has not financially penalized, and does not intend to financially penalize, [AV Automotive] in connection with the alleged submission to [Audi USA] of manipulated customer surveys." On April 9, 2019, the Appellants communicated by letter to Gebreyessus' counsel that they would withdraw the allegations regarding the Audi Penalty and the claim of damages in the amount of $700,000. On August 16, 2019, four months after sending the letter to counsel, the Appellants filed a praecipe with the circuit court withdrawing the allegations relating to the Audi Penalty.

AV Automotive designated Domenico Conti, an in-house accountant serving as the Rosenthal Group's Corporate Controller, as an expert witness to testify about Gebreyessus' compensation, bonuses, and benefits; bonuses paid and terms for bonuses to AV Automotive; and past lost profits relating to Egnew's departure. Conti testified that he was made aware of his expert designation three to four weeks prior to his deposition. In his deposition, Conti indicated he had no opinion on damages suffered by the Appellants, but he confirmed the accuracy of a document summarizing Gebreyessus' commissions.

After the Appellants' withdrawal of the Audi Penalty claim and the taking of Conti's deposition, on September 13, 2019, Gebreyessus filed a motion for sanctions against the Appellants and their counsel pursuant to Code § 8.01-271.1 for the "bad faith filing and prosecution" of the lawsuit against her. Gebreyessus sought sanctions "in an amount sufficient

3

to cover the considerable amount of reasonable attorney's fees needlessly incurred" in defending the suit. She asserted that the Appellants lacked factual support for asserting the Audi Penalty claims against her, as AV Automotive had never been penalized by Audi USA. Gebreyessus additionally alleged that the Appellants attempted to conceal their bad faith by refusing to produce corporate designees and expert witnesses for depositions. Gebreyessus specifically used Conti's expert designation to support an award of sanctions, arguing that Conti had no knowledge of his designation until just a few weeks prior to his deposition and that he ultimately gave no substantive opinions on damages. The Appellants opposed the motion.

The Appellants filed motions to nonsuit as to all parties.[2] The circuit court granted the motions to nonsuit, but it retained jurisdiction to address Gebreyessus' sanctions motion.

Following a hearing, the circuit court granted Gebreyessus' motion for sanctions by final order on December 30, 2020. Though the circuit court could not find most of the claims to be frivolous or sanctionable, the court awarded sanctions of $213,196.95—Gebreyessus' total attorney's fees—against the Appellants, but not against counsel. The award was based on the Appellants' "(1) repeated misrepresentations of actual penalties from Audi USA in the amount of approximately $700,000.00; (2) the designation of Mr. Conti as an expert without his knowledge; and (3) actions related to court ordered deposition dates." The circuit court found that the Appellants "failed to establish factual grounds to form a reasonable belief it had a claim for damages under its contract claim with Audi USA." The circuit court further found that Conti was designated as an expert witness without his knowledge, and that the "lack of consultation

_____

[2] Geneva moved for a nonsuit on September 5, 2019. While Gebreyessus' motion for sanctions was pending before the circuit court, AV Automotive also moved for a nonsuit.

4

with a designated expert witness is even more egregious when said expert is an employee of the Plaintiff."

Notably, the circuit court rejected the Appellants' argument that attorney's fees could not be awarded to Gebreyessus because Gebreyessus was not paying her own attorney's fees.[3] The circuit court further rejected the contention that "[attorney's] fees must be properly separated out before [the circuit court could] make an award under *Oxenham v. Johnson*, 241 Va. 281 (1991)," concluding that "it would be impossible to separate time spent solely defending against the frivolous Audi Penalty claim because [AV Automotive] mixed in that frivolous claim with its request for damages within nearly every count."

This appeal followed.

## II.  ANALYSIS

On appeal, the Appellants contend that the circuit court abused its discretion by imposing sanctions against them under Code § 8.01-271.1.  "Under settled principles, we apply an abuse of discretion standard when reviewing a sanctions award pursuant to Code § 8.01-271.1." *Robert & Bertha Robinson Fam., LLC v. Allen*, 295 Va. 130, 139 (2018).  This Court has identified three primary ways a circuit court can abuse its discretion:

> when a relevant factor that should have been given significant weight is not considered; when an irrelevant or improper factor is considered and given significant weight; and when all proper factors, and no improper ones are considered, but the court, in weighing those factors, commits a clear error of judgment.

*Galiotos v. Galiotos*, 300 Va. 1, 11 (2021) (quoting *Landrum v. Chippenham and Johnston-Willis Hosps., Inc.*, 282 Va. 346, 352 (2011)).  We have stated that a "court's imposition of a

---

[3] Gebreyessus, Preske, and Bavely had a joint defense agreement, whereby Bavely agreed to pay for Preske's and Gebreyessus' attorney's fees.

sanction will not be reversed on appeal unless the court abused its discretion in 1) its decision to sanction the litigant, or 2) in the court's choice of the particular sanction employed." *Switzer v. Switzer*, 273 Va. 326, 331 (2007).

Code § 8.01-271.1(B)(ii) "provides that an attorney's signature to a pleading has a two-pronged effect: the attorney certifies that the pleading is well-grounded in fact, to the best of his knowledge, and also that it is warranted by law, or a good faith argument for a change in the law." *Ford Motor Co. v. Benitez*, 273 Va. 242, 250 (2007). Code § 8.01-271.1 further states that

> [i]f a pleading . . . is signed or made in violation of this section, the court, upon motion or upon its own initiative, shall impose upon the person who signed the [pleading] . . . , a represented party, or both, an appropriate sanction, which may include an order to pay to the other party or parties the amount of the reasonable expenses incurred because of the filing of the pleading, . . . including reasonable attorney fees.

Code § 8.01-271.1(D).

### A. The Audi Penalty Claim

The Appellants contend that their claims for damages associated with the Audi Penalty were "well-grounded in fact at the time they were made," and therefore, the circuit court abused its discretion in imposing sanctions. When this Court reviews the imposition of sanctions pursuant to Code § 8.01-271.1,

> we use an objective standard of reasonableness in determining whether a litigant and his attorney, after reasonable inquiry, could have formed a reasonable belief that the pleading was well grounded in fact, warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law, and not interposed for an improper purpose.

*Flippo v. CSC Assocs. III, L.L.C.*, 262 Va. 48, 65-66 (2001). Any doubts should be resolved in favor of the counsel and party filing the pleading. *Tullidge v. Board of Supervisors*, 239 Va. 611, 614 (1990).

In their February 19 Complaint and in subsequent pleadings, the Appellants claimed that they were affirmatively damaged because of the falsified customer reviews.  Specifically, they claimed with certainty that

> "AV [Automotive] *has been* penalized by Audi USA.  AV [Automotive] must repay bonus monies back to Audi USA for the entire time when the false customer surveys were in play.  AV [Automotive] *has been* damaged in the amount of approximately $700,000.00."

(Emphases added).  It later became apparent that at the time of the filings, Audi USA had not financially penalized AV Automotive.  Audi USA unquestionably advised AV Automotive's counsel that Audi USA had not, and did not intend to, financially penalize AV Automotive in reference to the submission of the falsified customer surveys.  Thus, when the Appellants filed their pleadings, neither party could have had an objectively reasonable belief that the Audi Penalty damage claims were grounded in fact, as required by Code § 8.01-271.1.  Therefore, the circuit court did not abuse its discretion in sanctioning the Appellants for their "repeated misrepresentations of actual penalties from Audi USA."

### B.  Issues Pertaining to Discovery

i.  Sanctions Awarded Against Appellants and Not Counsel

The Appellants contend on appeal that the circuit court erred in awarding sanctions against them and not their attorneys for issues related to discovery.  Code § 8.01-271.1 "provides that if this rule is violated, the court 'shall impose' an appropriate sanction upon *the attorney, a represented party, 'or both,'* and that such sanctions may include reasonable attorney's fees." *Northern Va. Real Est., Inc. v. Martins*, 283 Va. 86, 105 (2012) (emphasis added).  When "sanctioned parties desire to seek allocation of fault or the apportionment of such sanctions [between attorney and client], they carry the burden of providing the trial court with evidence

7

sufficient to do so." *Id.* at 115. The record is devoid of any indication that the Appellants met their burden of providing the circuit court with evidence sufficient to allow the apportionment of sanctions. To the contrary, the circuit court stated in a footnote that it had "exercised discretion in not sanctioning plaintiff's counsel in addition to the plaintiff" and gave counsel "the benefit of the doubt given that counsel's actions were based on information received from [the Appellants.]" Consequently, we cannot say that the circuit court abused its discretion in awarding sanctions against only the Appellants.

ii.   Expert Witness Designation

In awarding sanctions, the court took issue with the Appellants' lack of consultation with their expert prior to designation, finding it particularly "egregious" where that expert was their own employee.

On appeal, the Appellants argue that "nothing egregious or sanctionable has occurred when an employee or in-house expert testifies to information learned or acquired during [their] employment and testifies consistent[ly] with [their] expert disclosure." The expert witness designation stated that Conti, an employee of the Rosenthal Group, was expected to testify concerning the damages incurred by the Appellants because of Gebreyessus' conduct. The designation states that Conti was designated as an expert in the field of accounting only to the extent his testimony was considered "expert in nature." Conti was not a hired expert, and he testified in his deposition that he was not compensated for his expert testimony. Although Conti testified that he learned of his designation as an expert witness only three to four weeks prior to his deposition, he had prepared documents detailing Gebreyessus' compensation that he referenced during his deposition six months prior. In his deposition testimony, Conti provided only information to which he had access by virtue of his employment. Because Conti was an

8

employee of the Appellants, and thus not a true "expert witness," we agree with the Appellants that Conti's delayed notification of his expert designation is not sanctionable conduct under Code § 8.01-271.1.

iii.    Deposition-Related Issues

The circuit court based its sanctions award, in part, on "actions related to court ordered deposition dates." Because the circuit court did not explain its reasoning as to this basis, we can only presume it was referencing Gebreyessus' argument that the Appellants went "to extraordinary lengths to delay their own party depositions as well as their two designated experts" by extensively rescheduling and eventually forcing Gebreyessus to obtain an order compelling the depositions. Code § 8.01-271.1 is triggered by a "pleading, motion or other paper." *See EE Mart F.C., LLC v. Delyon*, 289 Va. 282, 286 (2015); *Environment Specialist, Inc. v. Wells Fargo Bank Nw.*, 291 Va. 111, 117 (2016). While we agree with the circuit court that the actions of the Appellants in delaying depositions may have been sanctionable, the circuit court failed to cite to any offending pleadings, motions, or papers surrounding these delays that support the award of sanctions under Code § 8.01-271.1. However, because the court could have awarded sanctions "for actions related to court ordered deposition dates" by relying on Rule 4:12(b) and (d), it appears the court nonetheless reached the right result for a different reason.[4]

_____

[4] The sanctions a trial court may impose if a party fails to comply with an order compelling discovery are detailed in Rule 4:12(b)(2), which provides, in relevant part:

> If a party . . . fails to obey an order to provide or permit discovery . . . the court in which the action is pending may make such orders in regard to the failure as are just, . . . [and] the court must require the party failing to obey the order or the attorney advising him or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the court finds that the failure was substantially justified or that other circumstances make an award of expenses unjust.

9

C. Attorney's Fees as a Sanction

i.  The Meaning of Attorney's Fees Incurred under Code § 8.01-271.1

The Appellants contend on appeal that the circuit court abused its discretion in awarding attorney's fees as a sanction under Code § 8.01-271.1 because Gebreyessus did not "incur" any attorney's fees in this case. Because Bavely paid Gebreyessus' fees, there were no fees for Gebreyessus to recover. This Court has not addressed whether a represented party who is not personally paying his or her own attorney's fees has incurred reasonable expenses that may subsequently be awarded as sanctions pursuant to Code § 8.01-271.1.

Textually, the statute provides that a court "shall impose . . . an appropriate sanction, which may include an order to pay to the other party . . . the amount of the reasonable expenses incurred because of the filing of the pleading, . . . including reasonable attorney fees." Code § 8.01-271.1(D). It does not provide that the court "shall impose . . . an appropriate sanction, which may include an order to pay to the other party . . . the amount of the reasonable expenses incurred *directly by the other party* because of the filing of the pleading, . . . including reasonable attorney fees." Code § 8.01-271.1(D).[5] The General Assembly allows sanctions for fees that have been "incurred." Here, the lawyers were not working for free. Their fees were

_____

[5] The language of Code § 8.01-271.1(D) contrasts with the language of Code § 38.2-2201. In Code § 38.2-2201(A)(3)(a), the General Assembly equated "incurred" with an expense that the "insured is directly responsible for payment of . . . ." That language – "directly responsible for payment of" – is absent from Code § 8.01-271.1. "[W]hen the General Assembly has used specific language in one instance, but omits that language or uses different language when addressing a similar subject elsewhere in the Code, we must presume that the difference in the choice of language was intentional." *Zinone v. Lee's Crossing Homeowners Ass'n*, 282 Va. 330, 337 (2011); *see also Halifax Corp. v. Wachovia Bank*, 268 Va. 641, 654 (2004) ("[W]hen the General Assembly includes specific language in one . . . statute, but omits that language from another . . . statute, [courts] must presume that the exclusion of the language was intentional" because under these circumstances, it is evident that the General Assembly "knows how" to include such language in a statute to achieve an intended objective; thus the "omission of [such] language [in another statute] represents an unambiguous manifestation of a contrary intention."

10

incurred.  Even if their fees are ultimately paid for by Bavely rather than by Gebreyessus,  that does not make them any less "incurred."  It is not unusual for counsel fees to be covered by a non-party, such as a corporation, an insurance company, a parent, legal aid, or a civil rights group.

Furthermore, the purpose of imposing sanctions is "punishment and deterrence" – not compensation.  *Cardinal Holding Co. v. Deal*, 258 Va. 623, 632 (1999).  Therefore, even if an opposing party who is not paying the attorneys' fees obtains a "windfall," that does not preclude the imposition of a sanction to cover the cost of the attorneys' fees.

Code § 8.01-271.1 dictates that when the statute has been violated, the court "*shall impose* . . . an appropriate sanction, which *may* include an order to pay to the other party . . . the amount of the reasonable expenses incurred because of the filing of the pleading, . . . including reasonable attorney fees."  Code § 8.01-271.1(D) (emphases added).  We conclude that regardless of whether the attorney's fees were incurred personally by Gebreyessus, the fees were incurred on her behalf because of the filing of the sanctionable pleadings.  The circuit court was within its discretion to hold that an award of those fees as a sanction was sufficient to "deter the conduct at issue in this matter."  However, for the reasons that follow, we find that the circuit court erred in awarding the total amount of the attorney's fees claimed.

ii.    Amount of Attorney's Fees Awarded as Sanctions

On appeal, the Appellants contend that the circuit court erroneously awarded a sanction of the total amount of attorney's fees claimed by Gebreyessus.  Specifically, they argue that the circuit court erred in refusing to segregate the attorney's fees incurred due to sanctionable conduct from the fees incurred for non-sanctionable conduct.

11

In its final order, the circuit court rejected the Appellants' contention that "[attorney's] fees must be properly separated out before [the circuit court could] make an award under *Oxenham v. Johnson*, 241 Va. 281 (1991)." The circuit court concluded that the facts of this case distinguish it from *Oxenham*, where this Court's decision was based on the "failed attempt of the parties to separate its fees based on defending against the purely compensatory damages versus the punitive damages." The circuit court stated that "it would be impossible to separate time spent solely defending against the frivolous Audi Penalty claim because [the Appellants] mixed in that frivolous claim with [their] request for damages within nearly every count."

> Code § 8.01-271.1 expressly limits the amount that may be awarded to an appropriate sanction, which may include those attorney's fees and expenses "incurred *because* of the filing of the pleading, motion, or other paper or making of the motion." (Emphasis added.)

*EE Mart F.C., L.L.C.*, 289 Va. at 286. The "incurred because of" language in Code § 8.01-271.1 requires that when a trial court awards attorney's fees as a sanction, those fees must have been sustained as a direct result of the sanctionable conduct. *Id.* Consequently, an appropriate sanctions award of attorney's fees pursuant to Code § 8.01-271.1 is restricted to fees incurred acting in response to the sanctionable pleading. *Id.* (citing *Oxenham*, 241 Va. at 289-90).

We find that *Oxenham* is indistinguishable in any way that is pertinent to the case before us. The trial court in *Oxenham* awarded sanctions against a plaintiff's attorney for violations of Code § 8.01-271.1, which stemmed from a malicious prosecution claim brought against a Department of Social Services licensing inspector. *Oxenham*, 241 Va. at 284-85. In the course of litigation, it became clear that the subject charging decision was made by the licensing administrator and not the licensing inspector. *Id.* However, the plaintiff persisted with the malicious prosecution claim and made a damages claim against the licensing inspector. *Id.* The

12

jury ultimately found for the defense, and the licensing inspector filed a motion for sanctions against the plaintiff. *Id.* The trial court awarded sanctions, finding that the plaintiff failed to conduct a reasonable investigation and the purpose for filing the action was "to harass the defendant." *Id.* at 286.

On appeal, this Court held that the trial court erroneously based the sanction award, at least in part, on the plaintiff's continued claim for compensatory damages after discovery revealed that the licensing inspector was likely not the person who made the charging decision. This Court further found that although the plaintiff's frivolous claim for punitive damages should not have been presented at trial, elements of the compensatory damages claim were "subsumed in [plaintiff's] claim for punitive damages." *Id*. at 290. Since the "sanction requested and imposed was an award of attorneys' fees," the

> [licensing inspector's] attorneys' time spent in defending the punitive damage claim should have been segregated and the sanction based only on the time taken in defending that claim. Although the trial court did not award the full amount of the attorneys' fees claimed, it based its award upon a projection of the time [licensing inspector's] attorneys spent in defending the entire case. In doing so, it based its conclusion upon an erroneous application of the law and thereby abused its discretion.

*Id.* This Court, however, refused to remand the case to the trial court, finding that further proceedings in an attempt to apportion the fees "would impose additional and unnecessary burdens upon [the licensing inspector] and the trial court." *Id.*

Here, the circuit court failed to make any attempt to segregate the amounts incurred because of the Appellants' sanctionable conduct, namely, the costs incurred defending the Audi Penalty claim. *See Oxenham*, 241 Va. at 290; Code § 8.01-271.1. Therefore, the award of sanctions in the full amount of Gebreyessus' requested attorney's fees was improper and an abuse of discretion. We do not find that it "would impose additional and unnecessary burdens"

13

on the circuit court to segregate fees related to the Audi Penalty claim, as Gebreyessus' attorneys provided detailed billing statements and invoices. *See Oxenham*, 241 Va. at 290. "[E]ven if the trial court found the task of apportioning attorney's fees between frivolous and non-frivolous claims to be unworkable, a public censure or other 'appropriate sanction' could be imposed to 'give effect to the [statute's] central goal of deterrence.'" *Id.* at 299 n.4 (Poff, J., dissenting) (quoting *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 393 (1990)).

## III. CONCLUSION

For the reasons stated, we conclude that the circuit court was within its discretion to award sanctions against the Appellants. However, we find that the circuit court abused its discretion in awarding sanctions for Appellants' failure to notify Conti of his expert witness designation. We also find that the circuit court abused its discretion in failing to segregate the sanctionable Audi Penalty claim from the attorney's fees requested. Accordingly, we reverse the sanctions award and remand the matter to the circuit court for a recalculation of the attorney's fees commensurate with this opinion.

*Affirmed in part; reversed and remanded in part.*

JUSTICE CHAFIN, with whom JUSTICE KELSEY joins, concurring in part and dissenting in part.

The majority holds that although Gebreyessus' attorney's fees were not personally incurred by Gebreyessus, they were incurred on her behalf in response to the Appellants' sanctionable pleadings. For this reason, the majority holds that the circuit court could award those fees as a sanction pursuant to Code § 8.01-271.1. Because the plain language of the statute contradicts the majority's holding on this issue, I respectfully dissent.

14

"Alleged errors involving statutory interpretation or application present questions of law that we review de novo on appeal." *Lucas v. Riverhill Poultry, Inc.*, 300 Va. 78, 87 (2021).  This Court is bound by the "plain language of a statute unless the terms are ambiguous or applying the plain language would lead to an absurd result." *Id.* (quoting *Boynton v. Kilgore*, 271 Va. 220, 227 (2006)).  "We must also assume that the legislature chose, with care, the words it used when it enacted the relevant statute." *Barr v. Town & Country Props., Inc.*, 240 Va. 292, 295 (1990).  "Where the General Assembly has expressed its intent in clear and unequivocal terms, it is not the province of the judiciary to add words to the statute or alter its plain meaning." *Couplin v. Payne*, 270 Va. 129, 137 (2005) (quoting *Jackson v. Fidelity & Deposit Co.*, 269 Va. 303, 313 (2005)).  In addition, "[i]n th[e] Commonwealth, courts . . . are not free . . . to ignore language[ ] contained in statutes." *SIGNAL Corp. v. Keane Fed. Sys., Inc.*, 265 Va. 38, 46 (2003); *Andrews v. Richmond Redevelopment & Hous. Auth.*, 292 Va. 79, 86 (2016).  "That is to say, '[w]hen the legislature has used words of a plain and definite import the courts cannot put upon them a construction which amounts to holding the legislature did not mean what it has actually expressed.'" *Andrews*, 292 Va. at 87 (quoting *Kiser v. A.W. Chesterton Co.*, 285 Va. 12, 25 (2013) and *Barr*, 240 Va. at 295).

Code § 8.01-271.1 states that the court "shall impose . . . an appropriate sanction, which may include an order to pay to the other party . . . the amount of the *reasonable expenses incurred* because of the filing of the pleading, . . . *including reasonable attorney fees*." Code § 8.01-271.1(D) (emphases added).  To "incur" is "[t]o suffer or bring on oneself (a liability or expense)."  Black's Law Dictionary 917 (11th ed. 2019); s*ee also* Webster's Third New International Dictionary 1146 (2002) (defining "incur" as "becom[ing] liable or subject to" or "bring[ing] down upon oneself").  In effect, the majority's interpretation of Code § 8.01-271.1

15

adds words to the statute. The majority opinion directs that if a pleading violates the statute, the trial court "shall impose . . . an appropriate sanction, which may include an order to pay to the other party or parties the amount of the reasonable expenses *personally* incurred, *or incurred on behalf of the party*, because of the filing of the pleading, . . . including reasonable attorney fees." *See Couplin*, 270 Va. at 137 (reiterating that courts cannot add language to statutes).

The majority overlooks that the plain meaning of the term "incur" is to *personally* take on an expense or liability. Instead, the majority relies heavily on the fact that the attorney's fees were ultimately paid, even if they were paid by Bavely, a non-party, and not Gebreyessus. This reasoning is incomplete. The majority correctly states that "[i]t is not unusual for counsel fees to be covered by a non-party." However, in such scenarios (e.g., insurance companies, legal aid clinics, civil rights groups, etc.), fees would be awarded to the party because the party was legally liable (either by contract or implied indemnity principles) to reimburse the non-party payor. A party can only "incur" a legal expense when the party agrees to pay the fees directly or to pay them indirectly by incurring a liability to reimburse the actual payor. However, this logic does not apply to the case at hand. Gebreyessus never asserted that she was obligated to repay any attorney's fees to Bavely under their joint defense agreement. If Gebreyessus had been obligated to reimburse Bavely, then Gebreyessus would have indirectly "incurred" the expense. That is not what Gebreyessus asserts and, as the party seeking relief, she has the burden of proof.

The majority further contends that Code § 8.01-271.1 is punitive and not compensatory, thus allowing a court to award a punitive fee to Gebreyessus, who did not directly or indirectly incur any attorney's fees, so long as someone else paid the attorney's fees. This argument, though novel, is unprecedented and not supported by Virginia law. Under this construct, the majority misdescribes the punitive sanction as a fee award. While it is an award, it is not one of

16

fees. Rather, it is a judicially imposed fine calculated at the court's discretion. Neither the plain language of the statute nor its policy context supports this view by the majority.

To the extent that the majority opinion endorses a reading of Code § 8.01-271.1 that construes the statute as authorizing payment of the reasonable expenses *arising from* the filing of the offending pleading, including reasonable attorney fees, it impermissibly ignores the restrictive scope of "incurred." *SIGNAL Corp.*, 265 Va. at 46; *Andrews*, 292 Va. at 87.

While this Court has not previously defined the term "incurred" in the context of Code § 8.01-271.1, we have interpreted the term in instances involving automobile insurance policies covering medical expenses under Code § 38.2-2201. The General Assembly legislated that, in the context of medical payments in liability insurance policies, an expense is "incurred" if the "insured is directly responsible for the payment of the expense." Code § 38.2-2201(A)(3)(a).

In *Virginia Farm Bureau Mut. Ins. Co. v. Hodges*, 238 Va. 692 (1989), the plaintiff, who injured her arm in an automobile accident, sued her insurer. On appeal, we considered whether the plaintiff incurred certain medical expenses within a year under a former version of Code § 38.2-2201. The policy provided coverage for "all reasonable expenses . . . incurred within one year* from the date of the accident for necessary medical services." *Hodges*, 238 Va. at 693. The plaintiff's arm required several surgeries that could not be completed within one year. *Id.* at 694. In a signed memorandum, the plaintiff agreed to pay the cost of the necessary surgeries. *Id.* The memorandum was forwarded to the insurer but not to the surgeon or hospital. *Id.* at 695-96. Even though the plaintiff did not pay the surgeon during the year after her accident, she claimed

---

* Code § 38.2-2201 now provides coverage for reasonable medical expenses "incurred within three years after the date of the accident." Code § 38.2-2201(A)(1).

17

that her signed memorandum obligated her to do so. *Id.* at 695. The plaintiff sued her insurer for the cost of surgery even though she had not undergone the surgery and had not entered a binding contract with the doctor to perform the surgery after the one year. *Id.* at 694-95. The circuit court interpreted the term "incurred," as used in the policy, as including future treatment costs of medical needs that were diagnosed within the specified year, even if treatment would necessarily extend beyond that year. *Id.* at 695. The circuit court ordered the insurer to pay the amount for which the plaintiff was billed. *Id.* In reversing the circuit court, we stated that a medical expense "can only be 'incurred' . . . when one has paid it or become legally obligated to pay it." *Id.* at 696. Because no binding contract existed between the plaintiff and the surgeon, the insurer was under no obligation to pay the future medical bills. *Id.* Therefore, we concluded that because the future medical expenses were not incurred within the first year after the plaintiff's accident, they were not recoverable from the insurer. *Id.*

In *State Farm Mut. Auto. Ins. Co. v. Bowers*, 255 Va. 581, 585 (1998), we affirmed the *Hodges* definition of "incurred." In *Bowers*, after the plaintiff was injured in an automobile accident, he challenged the amount he was owed under the medical payment provisions of his contract with his automobile insurer. *Id.* at 583. The contract at issue stated that the insurer was to pay "all reasonable and necessary expenses for medical . . . services . . . incurred." *Id.* This Court concluded that the "medical expenses [the plaintiff] 'incurred' were the amounts that the health-care providers accepted as full payment for their services rendered to him. [The plaintiff] has not paid nor is he 'legally obligated to pay' the amounts written off by the providers." *Id.* at 585-86. We noted that "[t]o decide otherwise would be to grant [the plaintiff] a windfall because he would be receiving an amount greater than that which he would ever be legally obligated to pay." *Id.*

18

As evidenced by the clear language of the statute, the General Assembly's definition of the term in other contexts, and our prior interpretations of "incurred" in *Hodges* and *Bowers*, it is evident that the term "incurred" as used in Code § 8.01-271.1 refers to attorney's fees that were personally paid by Gebreyessus, or attorney's fees that Gebreyessus was legally obligated to pay.

I am of the opinion that the majority opinion will result in the same outcome we avoided in *Bowers*. Gebreyessus will receive a windfall, as she failed to assert on appeal that she personally incurred any expenses for attorney's fees. Gebreyessus maintains that Code § 8.01-271.1 does not "require the moving party to have personally incurred attorney's fees," nor does it say that the fees "must be incurred by a party" in the case. Prior to the filing of the motion for sanctions on September 13, 2019, the invoices submitted by the law firms engaged in Gebreyessus' defense were not addressed or directed to Gebreyessus. The invoices were addressed to her co-defendant or listed no recipient. The only invoices addressed to Gebreyessus were submitted after the motion for sanctions was filed, which gave the false impression that Gebreyessus was personally responsible for the fees. In actuality, the invoices were paid by funds previously deposited into the law firms' trust accounts.

Significantly, Bavely, a non-party, in her sworn deposition testimony stated that she was "paying the bills for Miss Gebreyessus for this case." On appeal, Gebreyessus concedes that no evidence in the record proves or disproves that she was obligated to repay attorney's fees and costs to Bavely. In fact, one of the fee invoices contains a line item for research on the discoverability of their joint defense agreement. If Gebreyessus was required to reimburse Bavely under their joint defense agreement, Gebreyessus' attorneys certainly would have trumpeted it as a basis for proving that Gebreyessus personally incurred the attorney's fees.

19

For these reasons, I would reverse the circuit court's decision in reference to the award of attorney's fees as sanctions, and therefore, I dissent from the majority's opinion as to this question.