Present:  All the Justices

STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY

v. Record No. 971257    OPINION BY JUSTICE CYNTHIA D. KINSER
                                April 17, 1998
KEITH BOWERS

            FROM THE CIRCUIT COURT OF HENRICO COUNTY
                    George F. Tidey, Judge


     This appeal involves the amount of reasonable medical

expenses incurred by an insured under a medical payments

provision of an automobile insurance policy.  Because we

find that the term "incurred" includes only those amounts

that the insured would be legally obligated to pay, we will

reverse the judgment of the circuit court.

                              I.

     On April 17, 1995, Carroll Keith Bowers was involved

in a motor vehicle accident in which he sustained injuries

requiring medical treatment.  At the time of the accident,

Bowers was insured under an automobile insurance policy

issued by State Farm Mutual Automobile Insurance Company

(State Farm).  Under the medical payments provision of the

policy, State Farm agreed to pay "on behalf of each injured

person, medical expense benefits as a result of bodily

injury caused by accident."  The policy defines medical

expense as "all reasonable and necessary expenses for

medical . . . services . . . incurred within three years after the date of the accident."

Bowers was also insured under a health insurance plan through Blue Cross/Blue Shield of Virginia (Blue Cross). All the health-care providers that rendered services to Bowers as a result of the accident had signed contracts with Blue Cross agreeing to accept fees based upon a fee schedule setting forth the reasonable value of the services provided. According to a representative of Blue Cross, the fee schedule was based on a governmental study performed by the Health Care Financing Administration to determine the reasonableness of fees for various medical services. Under the agreement with Blue Cross, a participating health-care provider could collect only the amount established by the fee schedule plus any co-payment that the insured was required to pay. In other words, the agreements with Blue Cross prohibited providers from collecting as full payment for their services any more than the scheduled fee and required co-payment.

Following his accident, Bowers sought medical treatment from various health-care providers and then submitted claims to State Farm under the policy's medical payments provision. One such claim was for $1,586 for treatment received from a rehabilitation and therapy

2

services company.  However, due to an administrative error, the check that State Farm issued to Bowers was for $31,586 instead of $1,586.  Upon realizing its mistake, State Farm contacted Bowers and requested that he return the $30,000 overpayment.  Bowers informed State Farm that he had spent the entire overpayment and refused to repay the balance.

As a basis for his refusal to repay State Farm, Bowers asserted that, subsequent to the overpayment, he had incurred additional medical expenses that should be offset against the amount allegedly owed to State Farm.[1]  A dispute arose between Bowers and State Farm in regard to the amount that he was entitled to offset.  Specifically, Bowers sought to offset the amounts that the health-care providers, absent agreements with Blue Cross, would have charged Bowers rather than the amounts that the providers accepted as full payment for their services under the Blue Cross fee schedule.[2]

---

[1] Following the $30,000 overpayment, Bowers submitted additional claims for medical expenses totaling $2,428 to State Farm for payment.  State Farm gave Bowers credit against the $30,000 overpayment, reducing his obligation to $27,572.

[2] For example, an orthopedic clinic billed $3,770.50 for the services provided to Bowers.  However, since the orthopedic clinic was a participating provider under the Blue Cross plan, it agreed to accept $1,157.25 as full payment for its services in accord with the Blue Cross fee schedule.  Of that amount, Blue Cross paid the orthopedic

3

Because of the dispute and Bowers' refusal to repay, State Farm filed an action for unjust enrichment against Bowers, seeking to recover the money it mistakenly paid to him.  On October 25, 1996, the circuit court granted State Farm's motion for partial summary judgment.  Because Bowers' claimed offset would reduce only a portion of the overpayment, the court awarded State Farm the sum of $17,703.51, plus interest.  Following a bench trial on January 29, 1997, the circuit court, in an order dated March 18, 1997, entered judgment against Bowers in "the total amount of $19,894.90 plus interest . . . , this amount representing the amount of the Partial Summary Judgment ($17,703.50) plus the sum of $2,191.40."  In a letter opinion, the court reasoned that State Farm cannot benefit from the agreement between Blue Cross and the health-care providers and, thus, allowed Bowers to offset

_____

clinic $861.70, and Bowers was to pay $295.55.  (At the time of trial, Bowers had paid only $35 of the $295.55.) In other words, the orthopedic clinic wrote off $2,613.25 of its original bill.  Bowers, nevertheless, claims that he should be able to offset the amount the orthopedic clinic billed rather than the amount that it accepted as full payment.  Thus, Bowers wants to offset the full $3,770.50 rather than the reduced fee of $1,157.25.

Six health-care providers issued total bills of $10,677.10 but accepted lesser payments totaling $3,007.50, thereby collectively writing off $7,669.60 of the amounts originally billed.

the full amount of the medical bills rather than the amounts accepted by the health-care providers as full payment. In other words, the court allowed Bowers to include in the offset the amounts that his health-care providers wrote off. The court also stated that "[t]he fact that the medical provider and [Blue Cross] have negotiated a figure acceptable to both of them for services performed does not set the standard of what is reasonable." State Farm appeals.

## II.

In its assignments of error, State Farm raises three issues, all of which concern the circuit court's interpretation of the medical payments provision of the State Farm policy and the amount that the court allowed Bowers to offset against the overpayment. Specifically, State Farm asserts that the circuit court erred (1) in determining the amount of "incurred" medical expenses, (2) in deciding the "reasonable" value of the medical services provided, and (3) in failing to reduce the amount of the offset because Bowers did not mitigate his damages.

The first issue requires us to construe the term "incurred" as used in the definition of medical expense. As already noted, the State Farm policy defines medical expense as "all reasonable and necessary expenses for

5

medical . . . services . . . incurred . . . ." State Farm argues that the "incurred" expenses are those amounts which the health-care providers accepted as full payment for their services. Bowers, however, posits that he "incurred" the full amount of the bills.

"If the language of an insurance policy is unambiguous, we will give the words their ordinary meaning and enforce the policy as written." United Services Auto. Ass'n v. Webb, 235 Va. 655, 657, 369 S.E.2d 196, 198 (1988). We have previously construed the term "incurred" in a nearly identical medical payments provision of an automobile insurance policy as unambiguous and concluded that "[a]n expense can only be 'incurred' . . . when one has paid it or become legally obligated to pay it." Virginia Farm Bureau Mut. Ins. Co. v. Hodges, 238 Va. 692, 696, 385 S.E.2d 612, 614 (1989).[3]

The evidence in the instant case was that Bowers would never be liable for any amount greater than that which the various health-care providers accepted as full payment for their services based on the Blue Cross fee schedule. Stated differently, the health-care providers' agreements

---

[3] The language at issue in Hodges was "all reasonable expenses incurred within one year from the date of accident for necessary medical . . . services." Id. at 693, 385 S.E.2d at 612.

6

with Blue Cross prevented them from collecting more than the scheduled fee and any required co-payment. Therefore, we conclude that the medical expenses Bowers "incurred" were the amounts that the health-care providers accepted as full payment for their services rendered to him. Bowers has not paid nor is he "legally obligated to pay" the amounts written off by the providers. Id.; accord Irby v. Gov't Employees Ins. Co., 175 So. 2d 9, 10 (La. Ct. App. 1965); United Services Auto Ass'n v. Schlang, 894 P.2d 967, 969 (Nev. 1995); Lefebvre v. Gov't Employees Ins. Co., 259 A.2d 133, 135 (N.H. 1969); Sanner v. Gov't Employees Ins. Co., 376 A.2d 180, 182 (N.J. Super. Ct. App. Div. 1977); Atkins v. Great Am. Ins. Co., 189 S.E.2d 501, 504 (N.C. Ct. App. 1972).[4] To decide otherwise would be to grant Bowers a

---

[4] In 1997, the General Assembly defined "incurred" in Code § 38.2-2201(A)(3), which addresses medical payments in liability insurance policies:

An expense . . . shall be deemed to have been incurred:

a. If the insured is directly responsible for payment of the expense;

b. If the expense is paid by (i) a health care insurer pursuant to a negotiated contract with the health care provider or (ii) Medicaid or Medicare, where the actual payment with reference to the medical bill rendered by the provider is less than or equal to the provider's usual and customary fee, in the amount of the actual payment; however, if the insured is required to make a payment in addition to the actual

7

windfall because he would be receiving an amount greater than that which he would ever be legally obligated to pay.

Turning to the second issue, we agree with the circuit court that the fact that medical providers and Blue Cross negotiate a fee schedule that is acceptable to them does not necessarily set the standard for what is a "reasonable" medical expense.  However, the only evidence in this case regarding reasonableness was from the Blue Cross representative.  She testified that the Blue Cross fee schedule was based on a government study that determined the reasonableness of fees for various medical services.  Thus, absent any evidence to the contrary, we must conclude in this case that the "reasonable" expenses were those contained in the Blue Cross fee schedule and accepted as full payment by the health-care providers.

Finally, State Farm claims that Bowers failed to mitigate his damages by reducing the amount of medical

_____

payment by the health care insurer or Medicaid or Medicare, the amount shall be increased by the payment made by the insured;

c. If no medical bill is rendered or specific charge made by a health care provider to the insured, an insurer, or any other person, in the amount of the usual and customary fee charged in that community for the service rendered.

8

expenses he "incurred." State Farm argues that, because Bowers directed a rehabilitation and therapy clinic not to submit one of its bills to Blue Cross, the bill was never reduced in accord with the Blue Cross fee schedule even though the clinic was a participating provider with Blue Cross. However, we do not decide this issue because State Farm presented no evidence regarding the amount that the rehabilitation and therapy clinic would have accepted as full payment under the Blue Cross fee schedule.

For these reasons, we conclude that the circuit court erred by granting an offset for any amount in excess of that which Bowers' health-care providers accepted as full payment for their services. The amount erroneously allowed by the circuit court is the amount that the health-care providers wrote off, $7,669.60. Accordingly, we will reverse the judgment of the circuit court and enter judgment here for State Farm in the additional amount of $7,669.60, for a total judgment in the amount of $27,564.50.

Reversed and final judgment.

---

While this statute does not apply to this case, our decision is consistent with the statutory definition of "incurred."