**Mark WOODRICH, Plaintiff,**

v.

**FARMERS INSURANCE COMPANY, INC., a foreign insurance company, Defendant.**

**No. 03 CV 396H(C).**

United States District Court, N.D. Oklahoma.

May 7, 2004.

Joseph F. Clark, Jr.—OBA # , Tulsa, OK, for Plaintiff.

Dennis King—OBA # 5026, Neil D. Van Dalsem—OBA # 16326, King, Taylor & Ryan, P.C., Tulsa, OK, for Defendant.

## ORDER

HOLMES, Chief Judge.

NOW ON THIS 22nd day of April, 2004, the Motion for Partial Summary Judgment of Farmers Insurance Company, Inc. ("Farmers") comes on for hearing before

the Court. Farmers moves that the Court enter partial summary judgment in Farmers' favor by finding that, as a matter of law:

1. Under the terms of Mark Woodrich's insurance policy, Farmers is only obligated to pay medical payments ("med pay") coverage benefits to Mr. Woodrich for his reasonable medical expenses;

2. Mr. Woodrich's reasonable medical expenses cannot exceed the amount of money that Mr. Woodrich's medical providers accepted as full payment for their services;

3. Farmers has already paid med pay benefits to Mr. Woodrich in a total amount that exceeds what his medical providers accepted as full payment;

4. Farmers does not owe additional contract benefits to Mr. Woodrich at this time; and

5. Mr. Woodrich cannot recover an attorney fee as damages in connection with his bad faith claim.

After considering the briefs submitted by the parties and hearing the arguments of counsel, the Court finds and orders that Farmers' Motion should be granted in its entirety.

### FINDINGS OF FACT

The following material facts are not in dispute:

1. On August 13, 2002, Mr. Woodrich was involved in the auto accident that resulted in the insurance claims that are involved in this lawsuit.

2. On the accident date, Mr. Woodrich was the named insured for Farmers Policy No. 08–12130–65–76. The Policy provided med pay coverage with a $100,000.00 per person, per accident limit. The Policy's terms concerning med pay coverage are contained in Endorsement E1142, which, in relevant part, stated as follows:

### ENDORSEMENT AMENDING PART III—MEDICAL

#### Coverage E—Medical Expense Coverage Your EZ Reader Car Policy

It is agreed that your policy is amended as described below:

Part III MEDICAL is deleted and replaced with the following:

**PART III MEDICAL**

**Coverage E—Medical Expense Coverage**

We will pay **reasonable expenses** for **necessary medical services** furnished within two years from the date of the **accident** because of **bodily injury** sustained by an **insured person.**

**Additional Definitions Used In This Part Only**

As used in this part, **insured person** means:

1. You or any **family member** while occupying, or through being struck by, a motor vehicle or trailer, designed for use on public roads....

**Necessary Medical Services** means medical services which are usual and customary for treatment of the injury, including the number or duration of treatments, in the county in which those services are provided.

**Necessary Medical Services** are limited to necessary medical, surgical, dental, x-ray, ambulance, hospital, professional nursing and funeral services, and include the cost of pharmaceuticals, orthopedic and prosthetic devices, eyeglasses, and hearing aids. We will reimburse you for any **necessary medical services** already paid by you.

\* \* \* \* \* \*

**Reasonable Expenses** means expenses which are usual and customary for **necessary medical services** in the county in

which those services are provided. We will reimburse you for any **reasonable expenses** already paid by you.

3. After the accident, Mr. Woodrich submitted medical bills to Farmers from the following medical providers: Family Medicine Associates, Tulsa Pain Consultants, Inc., Broken Arrow Physical Therapy, Radiology Consultants, St. Francis Hospital, Orthopedic Hospital of Oklahoma, Rick Huskey, D.C., Physical Rehabilitation of Tulsa and Neurological Specialists. He also submitted documents in support of a claim for prescription drug costs.

4. The face amount of Mr. Woodrich's medical bills, not considering any discounts, total $15,429.28. In addition, Mr. Woodrich submitted receipts and documents for prescriptions totaling $216.97. The total face amount of the medical bills and prescription charges that Mr. Woodrich submitted to Farmers is $15,429.28.

5. The "face amount" of the medical bills and prescription charges that Mr. Woodrich submitted to Farmers do not necessarily reflect what Mr. Woodrich's medical providers or pharmacists accepted as full payment.

6. At all relevant times, Mr. Woodrich had health insurance with United Healthcare, and many of his medical bills from the accident were submitted to and paid by United Healthcare. Some of Mr. Woodrich's medical bills were discounted by the medical providers after bills were submitted to United Healthcare.

7. The "face amount" of Mr. Woodrich's bill from Family Medicine Associates was $1,251.00. However, Family Medicine Associates' bill was submitted to United Healthcare, which paid the bill, except for $285.91. Family Medicine Associates then wrote off $285.91, thereby reducing the outstanding balance to zero.

8. The face amount of Tulsa Pain Consultants bill was $1,695.00. However, Tulsa Pain Consultants' bill was submitted to United Healthcare, which paid the bill except for $1,228.86. Tulsa Pain Consultants then wrote off $1,228.86, thereby reducing the outstanding balance to zero.

9. Mr. Woodrich is not personally liable for the write-offs that were applied to the bills as a result of the payments from United Healthcare.

10. The write-offs of Tulsa Medicine Associates and Tulsa Pain Consultants, standing alone, reduced Mr. Woodrich's liability for his medical expense by $1,514.57, bringing the total amount that was accepted by the providers as full payment to no more than $14,131.68.

11. To date, Farmers Insurance Company, Inc., has paid med pay benefits to Mr. Woodrich and his attorney in the total amount of $14,430.86.

12. In other words, Farmers Insurance Company, Inc., has already paid Mark Woodrich and his attorney more than his medical providers and pharmacists have accepted as full payment for their services and products.

13. In this lawsuit, Mr. Woodrich has contended that the "collateral source rule" prevents Farmers from considering the physician write-offs in determining the amount of med pay benefits that Farmers owes to him.

14. Mr. Woodrich claims damages in this lawsuit that are based upon a $400.00 attorney fee payment he made to Roberts Potts as an alleged result of Farmers' alleged delay in the handling of his med pay claim.

15. Mr. Woodrich first submitted medical bills to Farmers for payment in November 2002. Farmers paid part, but not all, of the medical bills before suit was filed on May 5, 2003. After this suit was filed,

Farmers paid all outstanding medical bills by making additional payments totaling $9,442.10 in May and June of 2003.

### CONCLUSIONS OF LAW

■ 1. In the insurance policy, Farmers agreed to pay "**reasonable expenses** for **necessary medical services** furnished within two years from the date of the **accident** because of **bodily injury** sustained by an **insured person**." The term "reasonable expense" is defined to mean "expenses which are usual and customary for **necessary medical services** in the county in which those services are provided." Additionally, the policy obligates Farmers to reimburse Mr. Woodrich for "any necessary medical services already paid by you." The plain meaning of the policy is that Mr. Woodrich's recoverable medical "expense" is no more than the provider actually agreed to accept as full payment.

2. This outcome is also supported by case law. In *State Farm Mutual Automobile Insurance Company v. Bowers*, 255 Va. 581, 500 S.E.2d 212, 214 (1998), a case involving auto med pay coverage, the court found that an insured could not recover the amounts written off by the providers because allowing a recovery of those amounts would grant the insured a "a windfall because he would be receiving an amount greater than that which he would ever be legally obligated to pay." The *Bowers* court interpreted policy language that is different that the language in Mr. Woodrich's policy. However, the Court finds that the reasoning of the *Bowers* case is persuasive.

■ 3. The collateral source rule is not relevant to the issues presented in this case. The collateral source rule applies in the context of common law tort actions to determine the amount of compensatory damages which will compensate the injured party for all detriment proximately caused. *See* 23 O.S.2001 § 61; *Blythe v. University of Oklahoma*, 82 P.3d 1021, 1026 (Okla.2003); *Denco Bus Lines v. Hargis*, 1951 OK 11, 229, 204 Okla. 339, 229 P.2d 560, 564. One rationale underlying the collateral source rule is that a wrongdoer should not "profit from an injured parties' insurance contract." *Weatherly v. Flournoy*, 929 P.2d 296, 300 (Okla. Ct.App.1996). Neither the collateral source rule nor its rationale have any application to Mr. Woodrich's med pay claim, which is a first party insurance claim.

4. Farmers has fully performed under the insurance contract. The benefit of the bargain provided by Mr. Woodrich's insurance policy was for Farmers to pay what the medical providers actually agreed to charge, not the list price or "sticker price." Farmers has already paid Mr. Woodrich more than what his medical providers actually charged for their services.

■ 5. A plaintiff in a bad faith case is not entitled to recover damages for fees paid to an attorney to collect amounts due under an insurance policy. *Barnes v. Oklahoma Farm Bureau*, 11 P.3d 162, 180–81 (Okla.2000). The $400.00 attorney fee that Mr. Woodrich claims to have paid to his counsel is not recoverable as damages in this lawsuit.

6. The Court does not reach the issues of whether Farmers' alleged delay in the payment of Mr. Woodrich's medical bills was a breach of contract or a breach of the covenant of good faith and fair dealing, or whether any damages were caused by Farmers.

IT IS THEREFORE ORDERED ADJUDGED AND DECREED that the Defendant's motion for partial summary judgment is granted in its entirety, and the Court finds and orders that, as a matter of law:

1. Under the terms of Plaintiff Mark Woodrich insurance policy, Farmers is only obligated to pay medical payments ("med pay") coverage benefits to Mark Woodrich for his reasonable medical expenses;

2. Mr. Woodrich's reasonable medical expenses cannot exceed the amount of money that Mr. Woodrich's medical providers accepted as full payment for their services;

3. Farmers has already paid med pay benefits to Mr. Woodrich in a total amount that exceeds what his medical providers accepted as full payment;

4. Farmers does not owe additional contract benefits to Mr. Woodrich at this time; and

5. Mr. Woodrich cannot recover the attorney fee that he paid to his counsel as damages in connection with his bad faith claim.

IT IS SO ORDERED!