PRESENT: Goodwyn, C.J., Powell, Kelsey, McCullough, Chafin, and Mann, JJ., and Millette, S.J.

COMMONWEALTH OF VIRGINIA

v. Record No. 220596

LARRY DALE PUCKETT

OPINION BY
JUSTICE D. ARTHUR KELSEY
NOVEMBER 22, 2023

FROM THE COURT OF APPEALS OF VIRGINIA

The trial court convicted Larry Puckett of malicious wounding and ordered him to pay restitution to the Virginia Department of Medical Assistance Services ("DMAS") for a portion of the victim's medical bills that DMAS had paid on the victim's behalf. In an unpublished opinion, the Court of Appeals held that the trial court had erred as a matter of law in doing so. We disagree and reverse.

I.

In what the trial court described as a "vicious attack," Puckett stabbed Justin Hawks multiple times in the chest and side. 1 J.A. at 510-11; *see also id.* at 239, 292-93. As a result of the stabbing, Hawks's sternum was fractured, and he required emergency medical care, including insertion of a chest tube and surgery to repair the lacerations of the right internal mammary artery and vein. 2 *id.* at 704-05.[1] The life-threatening wounds kept Hawks in the hospital for nearly a week. Hawks, however, did not have the financial ability to pay for his medical care. On behalf of Hawks, DMAS thus paid a small portion of the billed charges ($22,691.01 of $119,188.93) under DMAS's authority to administer Virginia's Medicaid program. *See generally* Code § 32.1-323; 12 VAC § 30-10-10; 42 C.F.R. § 431.50 (2022). The federal

_____

[1] We sealed the second volume of the Joint Appendix. To the extent that this opinion mentions facts found in the sealed record, only those specific facts have been unsealed because they are relevant to the decision in this case. The remainder of the previously sealed record remains sealed.

Medicaid system, administered by the states, "provides health insurance to . . . those with low incomes." *Biden v. Missouri*, 595 U.S. 87, 90 (2022) (per curiam).

During the sentencing hearing, Puckett's counsel conceded that the DMAS payments for which restitution was requested were "all coverage of the injuries . . . that Mr. Hawks had treatment for" and that the "correct" amount payable to DMAS was $22,691.01. 1 J.A. at 458-59. Puckett's counsel objected to including this figure in any restitution order, however, for a very specific reason. Such relief, he argued, "should be narrowly interpreted to be limited to Mr. Hawks *as opposed to* an insurance company, or in this instance the Department of Medicaid [sic] Assistance Services." *Id.* at 460 (emphasis added). The trial court disagreed. Applying Code § 19.2-305.1(B), the court ordered Puckett to reimburse DMAS for the medical expenses incurred by Hawks. The court made this restitution obligation a condition of Puckett's probation and suspended sentence. Relying on the factual proffers by the parties, the court stated that "*the victim's medical bills* . . . had apparently been paid by [DMAS] in the amount of $22,691.01." *Id.* at 150 (emphasis added).

Puckett appealed to the Court of Appeals on several grounds, but he only supported his assignment of error concerning the restitution award with a two-paragraph argument asserting that DMAS "clearly was not a 'victim' in this case as contemplated by the Code" and that the trial court thus "did not have the statutory authority to order restitution to [DMAS]." CAV R. at 99. In response, the Commonwealth argued that DMAS could be thought of as a constructive "victim" in a representative sense for the actual crime victim, "[m]uch like a private insurance carrier," and thus entitled to restitution on that basis. *Id.* at 871-73. The Commonwealth supported its position by relying upon an opinion of the Court of Appeals, which held that "[a]n insurance carrier, that has paid a theft or casualty claim as a result of the wrongdoing of a criminal defendant, stands in the place of the victim and may in the name of the victim pursue a

2

civil claim against the third party." *Alger v. Commonwealth*, 19 Va. App. 252, 256 (1994). Choosing to rely solely on his previous two-paragraph argument on this issue, Puckett did not file a reply brief in the Court of Appeals.

The Court of Appeals held that Hawks, not DMAS, was "the victim" under Code § 19.2-305.1(B) and that as a result, only Hawks, not DMAS, was entitled to restitution under the statute. *Puckett v. Commonwealth*, Record No. 1002-21-3, 2022 WL 3204694, at *9-10 (Va. Ct. App. Aug. 9, 2022) (unpublished). The analysis, however, did not stop there. In a footnote, the Court of Appeals stated that "[n]either party briefed or argued whether a victim 'incurs' a charge if insurance pays for the expense." *Id.* at *9 n.10.[2] Even so, the footnote went on to address the issue.

The Court of Appeals observed that "[t]o 'incur' means '[t]o suffer or bring on oneself (a liability or expense),'" *id.* (quoting Black's Law Dictionary 885 (10th ed. 2014)), and that this Court has held that a medical expense "can only be 'incurred' when one has paid it or become legally obligated to pay it," *id.* (quoting *Virginia Farm Bureau Mut. Ins. v. Hodges*, 238 Va. 692, 696 (1989); *State Farm Mut. Auto. Ins. v. Bowers*, 255 Va. 581, 585 (1998)). The Court of Appeals found this definition of "incurred" to be inapplicable because it arose in cases involving automobile insurance, and "[t]his, of course, is not an auto insurance case." *Id.* The Court of Appeals found that the pertinent definition of "incurred" is in a Medicaid regulation, which defines "[i]ncurred expenses" to exclude expenses "subject to payment by any liable third party."

---

[2] We question this characterization of the Commonwealth's briefing and argument in this case. The Commonwealth's brief specifically argued that DMAS should be treated "like a private insurance carrier," which is entitled to restitution because the insurer "stands in the place of the victim and may in the name of the victim pursue a civil claim against the third party." CAV R. at 871-72 (citation omitted). The Commonwealth repeated this position during oral argument before the Court of Appeals. *See* CAV Oral Argument Audio at 19:21 to 21:57, 23:17 to 23:22, 25:33 to 26:45, 28:03 to 28:17.

*Id.* (emphasis omitted) (quoting 12 VAC § 30-110-1020). "Under this logic, Hawks did not incur any medical expenses other than what he paid out of pocket." *Id.* The Court of Appeals concluded this discussion by stating that the Commonwealth "made no evidentiary showing below that the victim was charged for or liable for his medical expenses." *Id.*

After reversing the restitution award to DMAS, the Court of Appeals remanded the case to the trial court "for the limited purposes of determining whether, consistent with Code § 19.2-305.1(B), the evidence supports an award of restitution to Hawks for any 'medical expenses . . . incurred by the victim . . . as a result of the crime.'" *Id.* at *12. The Court of Appeals added that "the trial court may also consider, in its discretion, whether to award restitution to an aggrieved party under Code § 19.2-305." *Id.* The opinion ends by reminding the trial court that "the goal of rehabilitation would be disserved by imposing a restitution award so large that the defendant could never repay it." *Id.* (quoting *Tyler v. Commonwealth*, 75 Va. App. 218, 244 (2022) (Raphael, J., concurring)).[3]

## II.

We accepted review of this case to interpret Code § 19.2-305.1(B) and the scope of its restitution remedies. The statute is one of several enactments that codify aspects of the traditional power of criminal courts to order restitution. *See, e.g.*, Code §§ 19.2-305.1, -305.2, -305.4, -368.1 to -368.18. The judicial power of restitution codified in these statutes has ancient antecedents, *see* Charles W. Colson & Daniel H. Benson, *Restitution as an Alternative to Imprisonment*, 1980 Det. Coll. L. Rev. 523, 544-60; Stephen Schafer, Compensation and

---

[3] In a footnote, the Court of Appeals directed the trial court's attention to the fact that "Puckett was over sixty years old at sentencing" and received a 12-year active sentence — the apparent implication being that his age made the restitution award, which required a $50 monthly payment (or $1.66 a day) upon Puckett's release from prison, so onerous as to "disserve[]" the "goal of rehabilitation." *See Puckett*, 2022 WL 3204694, at *12 & n.13 (citation omitted).

Restitution to Victims of Crime 3-7 (2d ed. 1970), and a storied history in the English common law governing criminal punishment, *see, e.g.*, 4 William Blackstone, Commentaries \*362-63; 2 Frederick Pollock & Frederic William Maitland, The History of English Law Before the Time of Edward I 449-60 (2d ed. 1898).

Many modern statutes reflect the enduring themes of restitution, and chief among them is the hope that criminals will embrace restitution as a tangible way of truly demonstrating their capacity for, and genuine attempt at, rehabilitation. *See* John L. Costello, Virginia Criminal Law and Procedure § 69.3[6], at 1269 (4th ed. 2008) ("Restitution is a tool for rehabilitation . . . ."); 6 Wayne R. LaFave et al., Criminal Procedure § 26.9(b), at 1124 (4th ed. 2015) (recognizing that restitution is "intended to serve rehabilitative and deterrent purposes by causing a defendant to appreciate the relationship between his criminal activity and the damage suffered by the victim" (citation omitted)). If criminals have no empathy for their victims and no desire to atone even in some small way for their wrongdoing, any claim they make of being rehabilitated should not be taken seriously. Given the ambitious goals of restitution, appellate courts liberally construe statutes to give trial courts broad discretion to tailor restitution orders to fit the specific circumstances of each case. *See Paroline v. United States*, 572 U.S. 434, 457-60 (2014); *Howell v. Commonwealth*, 274 Va. 737, 739-40 (2007); Costello, *supra*, § 69.3[6], at 1269.

In this case, the trial court ordered Puckett to pay restitution pursuant to Code § 19.2-305.1(B) as a condition of his probation and suspended sentence. The relevant portion of this statute provides:

> Notwithstanding any other provision of law, any person who, on or after July 1, 1995, commits, and is convicted of, a crime in violation of any provision in Title 18.2 *shall make at least partial restitution* for any property damage or loss caused by the crime or for *any medical expenses* or expenses directly related to funeral or burial *incurred by the victim* or his estate as a result of the crime, may be compelled to perform community services and, if the court

5

so orders, shall submit a plan for doing that which appears to be feasible to the court under the circumstances.

Code § 19.2-305.1(B) (emphases added). The pertinent phrase is "any medical expenses . . . incurred by the victim." *Id.* The statute does not say that the restitution must be paid *to* the victim. It only requires that the expense be "incurred by the victim." *Id.*

The Court of Appeals started its analysis by correctly defining "incurred" as the past tense of "incur," which means "[t]o suffer or bring on oneself (a liability or expense)." *Puckett*, 2022 WL 3204694, at *9 n.10 (citation omitted). A host of legal and nonlegal dictionaries establish this definition as the near-unanimous understanding of this term. *See, e.g.*, 1 Noah Webster, An American Dictionary of the English Language (1828) (defining "incur" to mean "to become liable to" or "[t]o bring on; as, to *incur* a debt"); James A. Ballentine, A Law Dictionary 234 (1916) (defining "[i]ncur" as "[t]o become subject to or liable for by act or operation of law"); The American Heritage Dictionary 653 (2d College ed. 1985) (defining "incur" as "[t]o become liable or subject to, esp. as a result of one's own actions; bring upon oneself"); Webster's Third New International Dictionary 1146 (Philip Babcock Gove ed., 2002) (defining "incur" to mean "become liable or subject to" and "bring down upon oneself"); Black's Law Dictionary 917 (11th ed. 2019) (defining "incur" as "to suffer or bring on oneself (a liability or expense)").

We have applied the traditional definition of the term "incur" in various contexts, including cases in which an insurer directly pays an insured's medical expenses. *See, e.g.*, *State Farm Mut. Auto. Ins. v. Bowers*, 255 Va. 581, 585 (1998); *Virginia Farm Bureau Mut. Ins. v. Hodges*, 238 Va. 692, 696 (1989). More recently, we also explained that a client's legal fees were "incurred" even though a co-defendant in the same case "agreed to pay for [the client's]

6

attorney's fees" pursuant to a "joint defense agreement" because the "lawyers were not working for free." *AV Auto., LLC v. Gebreyessus*, 301 Va. 321, 328 n.3 & 333-34 (2022).[4]

In the present case, however, the Court of Appeals ended its analysis on this issue by adopting a definition of "incurred expenses" found in 12 VAC § 30-110-1020, an administrative regulation governing an individual's eligibility for Medicaid insurance. *See Puckett*, 2022 WL 3204694, at *9 n.10. The regulation is included within Part VI of Chapter 10 under the Health Title regulating DMAS, which uses defined terms for the purpose of calculating the "Deduction of Incurred Medical Expenses in Determining Countable Income (Spenddown)." One provision of that DMAS regulation, which is highlighted in the Court of Appeals opinion, excludes from the definition of "incurred expenses" any "*payment by any liable third party*." *Id.* (emphasis in original) (quoting 12 VAC § 30-110-1020). We fail to see the legal relevance of this administrative regulation. It exists only to help determine whether DMAS, through the Medicaid program, should pay the medical expenses of a "medically needy" patient whose income level is too high to qualify for Medicaid assistance. The determination is made by deducting expenses for which the patient is legally liable to pay from the patient's excess income. *See* 12 VAC §§ 30-110-1020 to -1040. The regulation merely ensures that Medicaid assistance is being provided only to patients who cannot pay for their care.

If someone other than the patient has already assumed the legal liability to pay the patient's medical bills (such as a private insurer, a guarantor, or an employer governed by the Workers' Compensation Act), then it makes sense that the Medicaid program would not consider that payment to be an "incurred expense" for the safety-net purpose of funding the medical needs

---

[4] We decided *AV Automotive, LLC* on September 15, 2022, over a month after the Court of Appeals issued its unpublished opinion in the present case and nearly a week after Puckett filed his notice of appeal to this Court, *see* CAV R. at 911-12.

of the low-income patient.  *See* Code § 32.1-325.2(B) ("[DMAS] shall be the payor of last resort to any insurer . . . or other party that is, by statute, by contract, or agreement legally responsible for payment of a claim for a health care item or service for persons eligible for medical assistance in the Commonwealth."); DMAS, Virginia Medical Assistance: Eligibility Manual ch. M15, subch. 10, at 12 (2023) ("Medicaid is a 'last pay' program and cannot pay any claim for service until the service provider has filed a claim with the recipient's liable third parties such as health insurance companies or legally liable person[s].");  2 Harvey L. McCormick, Medicare and Medicaid Claims and Procedures § 28:26 (4th ed. 2005) ("Thus, it is well settled that in third party liability situations, Medicaid is the 'payor of last resort.'" (citation omitted)).

To be sure, Medicaid coverage does not arise until it has been shown that the patient incurred a covered medical expense.  *See* 42 U.S.C. § 1396d(a) (defining "medical assistance" under Medicaid to mean "payment of part or all of the cost" of certain care and services provided to eligible individuals "whose income and resources are insufficient to meet all of such cost"); 2 Kimberley Dayton et al., Advising the Elderly Client § 29:2 (2023 ed.) ("Medicaid is a 'needs' based government entitlement program, that is, it pays the costs of medical care for persons 'whose income and resources are insufficient to meet the costs of necessary medical services.'" (citation omitted)).

Neither the text nor the context of 12 VAC § 30-110-1020 answers the question whether a patient (whether eligible or ineligible for Medicaid insurance) "incurs" medical expenses when he receives medical treatment.  Rather, that question is resolved by the traditional definition of "incurred" applicable to a criminal's duty to pay restitution under Code § 19.2-305.1(B).[5]  Using

---

[5] The Court of Appeals also relied upon 12 VAC § 30-10-570(C)(2)(e) for the proposition that a "Virginia Medicaid recipient cannot be charged any copay, deductible, or fee for emergency services."  *Puckett*, 2022 WL 3204694, at *9 n.10.  This Medicaid regulation,

8

this traditional definition, we hold that Hawks "incurred" the medical expenses for the treatments that he received as a result of Puckett's brutal knife attack. The fact that DMAS paid for some of these expenses through an agreement with the medical providers does not undermine this premise, just as the payments by the private insurers in *Bowers* and *Hodges* or the contractual indemnitor in *AV Automotive, LLC* did not change the fact that expenses had been incurred.

To reach this conclusion, we must respectfully disagree with the alternative argument advanced by the Court of Appeals that "the Commonwealth made no evidentiary showing below that the victim was charged for or liable for his medical expenses." *Puckett*, 2022 WL 3204694, at *9 n.10. Just as the lawyers in the sanctions case "were not working for free," *AV Auto., LLC*, 301 Va. at 333, the hospital and medical providers treating Hawks were not working for free either. The trial court entered into the evidentiary record a breakdown of the medical expenses (totaling more than $100,000) charged by the hospital and other medical providers for services rendered to Hawks and the corresponding amounts paid by Medicaid. *See* 2 J.A. at 620-21. Based upon this uncontested evidence, the trial court found that DMAS paid "the victim's medical bills" in the amount of $22,691.01. 1 *id.* at 150.

Puckett never challenged the trial court's finding because his argument had always been that Hawks, not DMAS, was the victim and that only Hawks, not DMAS, could be awarded restitution for the payment of Hawks's medical bills. Puckett argued in the trial court that victim restitution should "be limited to Mr. Hawks as opposed to an insurance company, or in this instance the Department of Medicaid [sic] Assistance Services." *Id.* at 459. His argument on appeal is no different. The statute, he argues, "only authorizes restitution to be ordered paid *to*

however, merely means that a Medicaid recipient will not be expected to share any of the costs of emergency services under the Medicaid plan. This regulation addresses cost-sharing after Medicaid coverage has already been established and is irrelevant to the question whether a patient previously incurred medical expenses for services rendered.

the 'victim,'" and the victim "must be the human being injured by the conduct, and not a government agency which *paid his medical bills*." Appellee's Br. at 14 (emphases added).

To be clear, we take it as a given that Hawks, not DMAS, was the actual "victim" of Puckett's stabbing. And we see no need to treat DMAS as a constructive victim.[6] To us, this victim vel non debate strays off the main topic. As we earlier observed, Code § 19.2-305.1(B) does not require that restitution be paid to the victim; it only requires that the expenses be "incurred by the victim." For purposes of Code § 19.2-305.1(B), a medical expense is "incurred" by a victim when he either pays it or incurs an express or implied obligation to pay it. It is true that neither situation would exist if the medical services were openly "provided free to the general public." DMAS, Virginia Medicaid Provider Manual ch. 1, at 11 (2022). But an incurred medical expense does not become unincurred simply because a medical provider waives its right to seek full payment from an indigent individual in hopes of recovering partial payment from a solvent entity, such as a private or public insurer. *See generally id.* (authorizing Medicaid payments for incurred expenses not directly billed to "indigent individual[s]" because of their

---

[6] The restitution form order in this case stated that "[p]ayment of restitution shall be made *on behalf of* the following victim(s): Victim 1: Department Of Medical Assistance Services." 1 J.A. at 151 (emphasis added). The "on behalf of" language is abstruse. The court previously had made clear that through DMAS the Commonwealth, not Hawks, paid the medical bills at issue and that the Commonwealth, not Hawks, "sought restitution for the victim's [i.e., Hawks's] medical bills." *Id.* at 150. Read in context, therefore, the "Victim 1" box on the form order appears to merely ensure that the clerk disburse the restitution funds *to* DMAS — not "on behalf of" DMAS. Though awkwardly worded, the form order seeks to effectuate the court's authority under Code § 19.2-305.1(D) to "disburse such [restitution] sums as the court may, by order, direct." This understanding parallels the statutory requirement that restitution orders "shall be docketed, in the name of the Commonwealth, or a locality if applicable, on behalf of the victim, as provided in § 8.01-446 when so ordered by the court, unless the victim named in the order of restitution requests in writing that the order be docketed in the name of the victim." Code § 19.2-305.2(B); *see also* Dep't of Jud. Servs., Off. of the Exec. Sec'y, Circuit Court Clerks' Manual—Criminal 6-4 (Aug. 2023 rev.). This practice enables the "victim named in the order" to enforce it "in the same manner as a judgment in a civil action." Kent Sinclair, Virginia Remedies § 56-2[A], at 56-5 (5th ed. 2016) (citing Code § 19.2-305.2(B)).

"inability to pay" provided that the medical provider "bills other patients to the extent that they are able to pay"). This line of reasoning does not depend on DMAS being treated as a constructive victim of Puckett's malicious wounding of Hawks.

### III.

In sum, the Court of Appeals erred by reversing the trial court's restitution order as violative of Code § 19.2-305.1(B). The statute authorized the trial court to order restitution as a condition of Puckett's probation and suspended sentence and to order payment of that restitution to DMAS for the portion of the medical expenses incurred by Hawks that DMAS had paid.

*Reversed and final judgment.*

11